**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 12, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,
    Cross-Appellee,

v

WILLIAM EMERY LeBLANC,

    Defendant-Appellee,
    Cross-Appellant.

No. 118774

_____

PER CURIAM

A circuit court jury convicted the defendant of third-degree criminal sexual conduct, but the Court of Appeals reversed on the ground that the defendant had been denied effective assistance of trial counsel. Because the circuit court's findings of fact were not clearly erroneous and its conclusions of law are correct, we agree with the circuit court that the defendant's trial attorneys were not ineffective. Accordingly, we reverse the judgment of the

Court of Appeals and reinstate the judgment of the circuit court.

I

In early 1998, the defendant was charged with one count of third-degree criminal sexual conduct for having sexual intercourse with his wife's daughter——his stepdaughter. MCL 750.520d(1)(a). The stepdaughter says that a number of sexual assaults occurred, culminating on a Sunday afternoon in May 1997, when sexual relations occurred in the defendant's truck, as they parked on a rural road.

The defendant has consistently denied the charge. He maintains that the criminal allegation is the complainant's revenge for parental discipline of an unruly teenager. At trial, he supplemented that defense with alibi testimony, seeking to demonstrate that he was working on the Sunday afternoons when this assault might have occurred.

This matter was tried before a Leelanau Circuit Court jury in the late summer of 1998. The jurors believed the complainant, and thus found the defendant guilty as charged. In October 1998, the court sentenced the defendant to term of six to fifteen years in prison. Two months later, the court denied the defendant's motion for new trial.

After the defendant appealed, the Court of Appeals granted his motion to remand,[1] so that he could file another

---

[1] Unpublished order, entered September 13, 1999 (Docket No. 217281).

motion for new trial.  On remand, the circuit court conducted a *Ginther*[2] hearing to determine whether the defendant had been denied effective assistance by the two attorneys who represented him at trial.  After taking testimony from several witnesses, the circuit court denied the motion.

Following the remand, the Court of Appeals reversed the defendant's conviction, agreeing with his contention that he had been denied effective assistance.[3]

The prosecuting attorney has applied for leave to appeal.[4]

II

In *People v Mitchell*, 454 Mich 145, 155-156; 560 NW2d 600 (1997), we explained the principles of law that govern an inquiry whether there has been a denial of effective assistance:

> The benchmark case describing the standard for claims of actual ineffective assistance of counsel in Michigan is *People v Pickens*, [446 Mich 298, 318; 521 NW2d 797 (1994)], which held that the right to counsel under the Michigan Constitution does not justify a more restrictive standard than that applied under the United States Constitution and adopted the Supreme Court's test in *Strickland* [*v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)].  That test requires the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the

---

[2] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

[3] Unpublished opinion per curiam, issued February 20, 2001 (Docket No. 217281).

[4] The defendant has also applied, seeking leave to appeal as cross-appellant.  We deny the defendant's application.

3

trial. It places the burden on the defendant to show, with regard to counsel's performance,

> "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. [*Id*. at 687.]"

> In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. at 689. [C]ases decided under the *Strickland/Pickens* test require the defendant to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

Accord, *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000).

### III

In conducting an appellate review of the manner in which these principles were applied by the circuit court and the Court of Appeals, we begin by locating the proper standard for such review. Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel.

4

As we have explained in other contexts, a trial court's findings of fact are reviewed for clear error. MCR 2.613(C), 6.001(D); cf. MCR 7.211(A)(3)(a). See, generally, *Grievance Administrator v Lopatin*, 462 Mich 235, 247, n 12; 612 NW2d 120 (2000); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *McDougal v McDougal*, 451 Mich 80, 87; 545 NW2d 357 (1996); *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992); *Mazur v Blendea*, 409 Mich 858; 294 NW2d 827 (1980).

Questions of constitutional law are reviewed by this Court de novo. *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001); *People v Dunbar*, 463 Mich 606, 615; 625 NW2d 1 (2001); *Blank v Dep't of Corrections*, 462 Mich 103, 112; 611 NW2d 530 (2000).

IV

In the present case, the Court of Appeals concluded that a review of the record had persuaded it that "trial counsel's performance undermines confidence in the reliability of the result. *Mitchell, supra*." That conclusion rested on three principal bases——failure to introduce testimony from a defense expert, failure to conduct a proper voir dire of prospective jurors, and failure to object to rebuttal testimony. However, we conclude that in each instance the circuit court, not the Court of Appeals, correctly resolved the issue whether the defendant was denied effective assistance.

5

A

Expert Testimony

The prosecution relied in part on the testimony of an expert in treating teenage sexual abuse victims.[5] The expert testified that young victims often delay reporting the crime because of embarrassment, concern for the family, and other reasons. The import of her testimony was that the behavior of the complainant in this case was consistent with the behavior often exhibited by such victims.

Defense counsel had subpoenaed an expert who was prepared to offer countering testimony. However, defense counsel did not call her to testify at trial.[6]

At trial, the prosecution expert properly refrained from offering an opinion regarding the defendant's guilt.[7] However, the Court of Appeals found her testimony to have been quite significant, and criticized defense counsels' failure to call the defense expert. Saying that the record belied the claim that the decision not to call her was strategic, the Court characterized defense counsels' preparation as "inadequate," and concluded, "our confidence in the

---

[5] The defendant disputes her expertise.

[6] It appears that both the prosecution expert and the would-be defense expert had counseled the complainant in this matter. However, defense counsel apparently did not seek to review the records of the defense expert.

[7] *People v Beckley*, 434 Mich 691, 727-729, 734, 744; 456 NW2d 391 (1990); *People v Peterson*, 450 Mich 349, 369; 537 NW2d 857 (1995).

reliability of the result has been undermined, *Mitchell, supra*, and a new trial based on ineffective assistance is warranted."

The contrary conclusion of the circuit court was explained in the opinion it issued after the remand proceedings. The circuit court noted several minor matters regarding which the would-be defense expert could have challenged the prosecution expert, but concluded that these were fairly inconsequential. The principal issue, obviously, was whether the defense attorneys had committed a serious mistake in deciding to forgo the testimony of the expert whom they had subpoenaed. Concerning this question, the circuit court stated:

> When [one of the defense attorneys] testified [at the remand hearing], he stated that his approach in examining [the prosecution expert] was to attack her credibility by showing that she was part of the police team and that she had a relationship counseling and treating the complainant. Thus she would not be objective in the juries' eyes. He went on to testify that he did not call [the defense expert] because in his experience a battle of the experts in cases of this type tends to favor of [sic] the prosecution. Merely calling a defense expert on these issues tells the jury that such experts are important and are to be believed and actually tends to increase in the [jurors'] eyes the importance of these expert witnesses in [defense counsel's] view. So he decided not to call [an expert].

> As a tactical decision, even in retrospect, this Court cannot say that [defense counsel's] plan about expert witnesses was wrong. During trial on August 26, 1998, under cross-examination by [defense counsel], the victim was asked what [the prosecution expert] had told her about the behavior of sexual abuse victims, implying she had been coached by [the expert]. He went on to bring out

7

by questioning the victim that [the expert] was involved with the prosecution team in planning how the trial was conducted. The defense team's approach to [the prosecution expert] was to show that she was not objective and that therefore her testimony to the jury could not be believed. This is a legitimate and reasonable tactical decision by an attorney as to how to handle the other side's expert witness.

This is a sound reading of the events that unfolded at trial⸺certainly there is no clear error in the circuit court's findings of fact. One can posit theories under which the defense might have been advanced by using the expert testimony of the woman whom the attorneys had subpoenaed. However, as explained in *Mitchell*, the inquiry is not whether a defendant's case might conceivably have been advanced by alternate means.

As noted above, our task on appeal is to examine de novo the constitutional issue whether, on facts properly found by the circuit court, the defendant was denied effective assistance. In the phrasing of *Mitchell*, we determine whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that "the deficient performance prejudiced the defense," i.e., "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 156, quoting *Strickland*, 466 US 687. On the present record, the decisions made by defense counsel concerning use of an expert witness were well

8

within the bounds of sound professional representation,[8] and did not come close to depriving the defendant of a fair trial.

Again, the central issue in this case is a mixed question of fact and law. We have found the circuit court's findings of fact not to be clearly erroneous, and we conclude, on those facts, that the decisions regarding use of an expert witness did not rise to the level of a constitutional violation.

B

Voir Dire

The defendant is a Native American, who was employed as a police officer. During voir dire, defense counsel did not ask the prospective jurors whether any of them harbored prejudice against Native Americans or police officers.

The circuit court observed that "[u]nnecessary voir dire about racial matters might have the effect of making race an issue when it was not," and concluded that, "[i]n this case, defense counsels' conscious decision not to inquire about race during voir dire was sound trial strategy." These conclusions were supported with a detailed discussion of the testimony presented by the defendant at the *Ginther* hearing.

Here, too, the Court of Appeals disagreed with the conclusion reached by the circuit court. Acknowledging that

_____

[8] As indicated, the Court of Appeals implied that defense counsel did not really make a reasoned decision, but contrarily that poor preparation led to the failure to call the defense expert. It is evident that the circuit court credited the testimony of the defense attorneys at the remand hearing, and we see no error in that determination.

"[t]he mere fact that a complainant and the victim are of different races does not make race a bona fide issue," the Court nonetheless held that "inquiry into any potential bias or prejudice against defendant was crucial where a conviction was based, in large part, on the credibility of the witnesses." Thus, "[w]hile defendant was unable to demonstrate that race was a bona fide issue in the case, we conclude that the failure to inquire into bias or prejudice based on occupation and race undermines the reliability of the verdict." The Court added that, "[b]ecause the jury's verdict was contingent on the credibility of defendant and the victim, any bias or prejudice by the jury could have served as the basis of the verdict."

Again, we have been shown no clear error in the circuit court's findings of fact. In addition, our de novo application of constitutional principles to those facts yields the same result as that reached by the circuit court.

As the circuit court noted, the defendant failed to produce evidence that failure to conduct voir dire on the topic of race, even if a serious mistake, led to any prejudice against the defense. At the *Ginther* hearing, a defense expert on juries offered the opinion that the populace of northern Michigan is prejudiced against Native Americans, although she presented no corroborative studies. Her "investigation" was limited to conversations with two attorneys (one who had appeared for the defendant in connection with postconviction

proceedings in the present case, and one who had represented the defendant's tribe in treaty-related matters) and a personal friend. The court aptly observed, "As a study of juror prejudice in northern Michigan, this hardly suffices to support her opinion."

The expert talked about survey findings in Minnesota, which evidently showed a degree of opposition in the non-Indian community to the treaty-based rights of Indians to engage in certain hunting, fishing, and gaming activities not open to the general populace. In this regard, the circuit court stated:

> From her testimony, the court deduced that the [Minnesota survey] questions related to the jurors' opinions of special rights that were secured to tribes pursuant to treaty, court decision, and otherwise respecting hunting, fishing and casino gambling. This case, however, had no aspect of controversy over hunting, fishing rights, casino gambling, or any other issue related to the rights of tribes and their members. The fact that a substantial number of Minnesota jurors, according to [the expert's] testimony, disapprove or have reservations about the special rights of tribes and their members to hunt and fish under historic treaties as interpreted by the federal courts or about the special rights of tribes to conduct gambling operations does not equate with personal prejudice against Indians. To conclude that those answers make the jurors racially prejudiced would be as foolish as concluding that former Michigan Supreme Court Justice and now [United States Court of Appeals for the Sixth Circuit] Judge James Ryan is racist because he dissented in a recent case in which the Sixth Circuit Court of Appeals held that commercial fishing boats operated by tribal members had the right to use municipal marinas in Leelanau County. See [*Grand Traverse Band v Dep't of Natural Resources*], 141 F3d 635 (CA 6, 1998). That a juror might express reservations about the propriety of the rights in question would not indicate that juror is racially prejudiced and

11

would be of little relevance unless the case grew out of a situation involving those treaty rights.

Next, the court discussed testimony concerning some specific incidents of racial bias against Native Americans in northern Michigan.  Here the court said that "it would be ignoring the obvious to suggest that there is no prejudice against Native Americans in northern Michigan or in any part of Michigan for that matter."  However, the court went on to say that, "[e]ven if this court could take judicial notice of that fact, it would also have to take judicial notice of the apparent widespread support in the public for Native Americans."

The court also discussed testimony concerning (a) the close attention paid by the jury to the complainant's testimony, (b) the reaction of some jurors to a smudging ceremony at the courthouse,[9] and (c) a question at the preliminary examination concerning whether anyone in the audience resided in Peshawbestown.[10]  As the court noted, each of these had a ready and benign explanation.

In its opinion of reversal, the Court of Appeals wrote:

> [E]ven when requested, an inquiry into racial prejudice is constitutionally required only where race is a bona fide issue in this matter. *Ristaino*

---

[9] Smudging is a Native American custom, in which herbs are burned to create a cleansing smoke, for the purification of persons, places, or objects.  See, generally, http://www.bmcc.org/Bimaadzwin/Traditions/smudging.htm.

[10] Many members of the Grand Traverse Band of Ottawa and Chippewa Indians reside in the Leelanau County community of Peshawbestown.

12

*v Ross*, 424 US 589, 594; 96 S Ct 1017; 47 L Ed 2d 258 (1976).

Nothing in the record before us suggests that race was a bona fide issue in the present case, as the Court of Appeals itself acknowledged. While the defendant and the complainant were of different racial backgrounds, that circumstance by itself is not sufficient to conclude that race is a bona fide issue in a case, requiring, as a constitutional matter, particular inquiry at voir dire. Both sides tried this case as a fact-specific dispute involving events that did or did not occur within a particular family. Simply put, this case was not about race.

The circuit court's findings of fact are not clearly erroneous, and we agree with its conclusions of law. On the record of this case, the defense lawyers did not withhold effective assistance of counsel when they did not inquire during voir dire about bias against Native Americans.

There is also an issue about failure to inquire about prejudice against police officers, but the circuit court properly noted that the record contains no evidence of bias against police officers in Leelanau County or among the persons hearing this particular case. Again, the record does not support the conclusion that the failure to inquire during voir dire constituted ineffective assistance.

C

Rebuttal Testimony

A third ground on which the Court of Appeals found

13

ineffective assistance was defense counsels' failure to object to certain rebuttal evidence.

The issue arose in this manner: In support of his alibi, the defendant testified that he was working on the dates when the assault might have occurred. In the course of this direct-examination testimony, he referred to the department logs, which documented his daily activities as an officer. On cross-examination, he was asked whether he had ever falsified his daily logs. He denied doing so. On rebuttal, the prosecutor called a department sergeant who testified, without objection, that the defendant falsified his log one day in July 1996 by recording a ninety-minute lunch break as though it had lasted only sixty minutes.

The Court of Appeals held, in effect, that counsel was obliged to object to this testimony:

> MRE 608(b) provides that specific instances of conduct of a witness, for the purpose of attacking credibility, other than conviction of a crime, may not be proved by extrinsic evidence. See also *Lagalo v Allied Corp (On Remand)*, 233 Mich App 514, 518; 592 NW2d 786 (1999). Once defendant denied falsification of any daily log, the prosecutor was "stuck" with that answer. *Wischmeyer v Schanz*, 449 Mich 469, 477-478; 536 NW2d 760 (1995). Furthermore, there was no dispute, based on the victim's work schedule, that any alleged sexual abuse would have occurred after, not during, defendant's work shift. Therefore, our confidence in the reliability of the verdict in light of defense counsel's failure to object to this specific instance of conduct, coupled with other errors in the trial, require reversal.

The Court of Appeals also found error in failing to object to other portions of the rebuttal testimony, including

14

matters that the Court characterized as "inconsequential" and not proper impeachment.

In its opinion on remand, the circuit court characterized the disputed rebuttal testimony as harmless, saying that "[t]he only possible exception might be the [sergeant's] testimony . . . ." It analyzed that portion of the record in this manner:

> When the defendant testified at [trial], he relied on the logs he maintained of his working time as a police officer for the Grand Traverse Band. He relied on those time logs to show that he could not have picked the victim up at her place of employment at [a restaurant] in Leland on the likely day in question. The accuracy of his employment time log was key to corroborating his statement that he did not and could not have driven the victim home from work, and stopped to commit the offense, on that day. He specifically testified that he never falsified his time logs.
>
> It was in rebuttal to that testimony that the prosecution offered [the sergeant] to testify that in fact on a prior occasion he had caught the defendant falsifying his time logs. By relying upon his time logs to corroborate his statement that he could not have committed the crime on the day in question and by specifically testifying that these time logs he never altered, the defendant opened the door to this rebuttal evidence and it was admissible.

In finding that the rebuttal testimony was improperly admitted, and that counsel therefore was ineffective for failing to object, the Court of Appeals relied, as noted above, on MRE 608(b):

> Specific instances of the conduct of a witness, *for the purpose of attacking or supporting the witness' credibility*, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of

15

truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. [Emphasis supplied.]

As the Court of Appeals correctly observed, it has long been the law of this state that a cross-examining attorney must accept the answer given by a witness regarding a collateral matter. *People v Hillhouse*, 80 Mich 580, 585; 45 NW 484 (1890); *Hamilton v People*, 46 Mich 186, 188; 9 NW 247 (1881). However, the law in this realm has nuances, including the rule, noted in *People v Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995), that impeachment can be proper on matters "closely bearing on defendant's guilt or innocence."

The present issue is whether defense counsels' failure to object constituted ineffective assistance. Our examination of the record persuades us that there was no ineffective assistance in this regard. First, as the circuit court observed, the existence of the logs was an element of the defendant's own testimony on direct examination. Further, the gist of his testimony was that these were essential police records, accurately maintained. In light of the alibi defense, it is far from clear that the defendant's inaccurate entry on another occasion was entirely a "collateral matter."

Further, we must weigh the strategic decisions made by

the experienced attorneys[11] who represented the defendant.  If counsel had objected to the prosecution's question about alteration of the logs, the counter-productive effect might have been to communicate to the jury that the defense was seeking to hide significant inaccuracies in the logs maintained by the defendant.  By allowing the rebuttal evidence (of a single occasion when the defendant stretched his lunch thirty minutes), counsel let the jury learn that the problem was slight.  Counsel went on, during closing argument, to use this testimony to the defendant's advantage, noting that the sergeant was "keeping an eye" on the defendant's record keeping.  This is the sort of professional judgment and careful advocacy, all done in the heat of trial, that we will not second-guess at this distance.

Again, this subissue reveals no clearly erroneous findings of fact by the circuit court.  Our de novo review of the constitutional question leads, for the reasons stated above, to the conclusion that the defendant was not denied the effective assistance of trial counsel.

D

Cumulative Error

The Court of Appeals closed its opinion with this:

> The cumulative effect of a number of errors may amount to error requiring reversal.  *People v*

---

[11] The defendant retained two attorneys, each of whom had twenty-five years of experience.  Each had worked both as a prosecutor and a defense attorney, and had tried hundreds of felonies.

*Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999).  After a thorough review of the record on appeal, we conclude that the cumulative effect of counsel's errors undermines the confidence in the reliability of the verdict and a new trial is warranted.  *Id.; Mitchell, supra.*

It is true that the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not.[12]  However, for the reasons stated above, this is not a case involving multiple errors by counsel.

Rather, this is a case in which two experienced attorneys provided a vigorous and effective defense for the accused.  After examining the full record of this case, we are mindful of what we said in *Mitchell*:

> In the real world, defending criminal cases is not for the faint of heart.  Lawyers must fulfill ethical obligations to the court, zealously advocate the client's best interests (which

---

[12] *People v Bahoda*, 448 Mich 261, 292, n 64; 531 NW2d 659 (1995), clarifies the meaning of the phrase "cumulative error."

In making this determination, only actual errors are aggregated to determine their cumulative effect. *United States v Rivera*, 900 F2d 1462, 1471 (CA 10, 1990) (en banc) ("Impact alone, not traceable to error, cannot form the basis for reversal").

That is, individual claims of error either have merit or they do not.  A ruling or action that is almost wrong does not become an error on the ground that, in the same case, other rulings or actions were almost wrong, too.  Thus, "cumulative error," properly understood, actually refers to cumulative unfair *prejudice*, and is properly considered in connection with issues of harmless error.  Only the unfair prejudice of several *actual* errors can be aggregated to satisfy the standards set forth in *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

includes establishing that they, and not the client, are in charge of making the professional decisions), and protect themselves against grievances and claims of malpractice. Lawyers will inevitably make errors in the process, but, because both cases and attorneys come in an infinite variety of configurations, those errors can only rarely be defined "with sufficient precision to inform defense attorneys correctly just what conduct to avoid." *Strickland* at 693. Thus, the Sixth Amendment guarantees a range of reasonably competent advice and a reliable result. It does not guarantee infallible counsel. [454 Mich 170-171.]

V

For these reasons, we conclude that the defendant was not denied effective assistance of counsel. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

19

S T A T E   O F   M I C H I G A N

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,
    Cross-Appellee,

v                                                         No. 118774

WILLIAM EMERY LeBLANC,

    Defendant-Appellee,
    Cross-Appellant.
_____

CAVANAGH, J. (*dissenting*).

Although I might disagree with the Court of Appeals conclusion, as other members of this Court do, that is not a reason to issue a per curiam reversal. The Court of Appeals applied the correct legal standard for ineffective assistance claims to the facts and had a plausible basis in the record for its conclusion that trial counsel was ineffective. I do not think the unpublished decision of the Court of Appeals is clearly erroneous and would deny leave.

    KELLY, J., concurred with CAVANAGH, J.