CLAY, Circuit Judge,
dissenting.
Goldy’s trial counsel rendered ineffective assistance by failing to object to the trial court’s obviously incorrect ruling that Eric White’s testimony was admissible to impeach Goldy’s answers on cross-examination. On that basis, I would affirm the district court and grant Goldy’s habeas petition.
As an initial matter, the majority applies an incorrect standard of review to this claim. Because the state court of appeals did not address the specific argument Goldy raised, AEDPA deference does not apply. “Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an adjudication on the merits. Thus, a federal habeas court reviews such unaddressed claims de novo.” Howard v. Bouchard, 405 F.3d 459, 467 (6th Cir.2005) (quotations and citation omitted). The district court correctly found that the state court of appeals failed to address this issue on review. The state court mistakenly believed Goldy’s claim was that his counsel was ineffective for initially telling jurors that Goldy would testify but subsequently failing to call Goldy. Goldy’s ac *175 tual claim was that his counsel did not object to the trial court’s blatant error in ruling that White testimony was admissible, even though counsel knew that White’s testimony would seriously undermine the defense’s trial strategy. As Gol-dy stated in his appellate brief to the state court of appeals: “Trial counsel did not even attempt to point out the error in the trial court’s suggestion that the prosecution would be permitted to open the door to the admission of testimony regarding the evidence which it had previously ruled either ‘irrelevant’ or inadmissible on the basis of M.R.E. 404(b), much less register an objection to it.” (J.A. at 101.)
The majority acknowledges that “the state court of appeals did not squarely address the issue of White’s testimony,” but then applies “modified AEDPA deference, focusing on ‘the result reached not the reasoning used.’ ” Majority Op. at 173 (quoting Hawkins v. Coyle, 547 F.3d 540, 546-47 (6th Cir.2008)). In Hawkins, this Court found that the state court had understood the petitioner’s ineffective assistance claim, but had rejected the merits of the claim “summarily.” 547 F.3d at 547. Because the state court rejected the claim without providing any reasoning, this Court conducted an independent review of the record and applicable law, but stated it would uphold the state’s decision as long as the outcome was not contrary to or an unreasonable application of clearly established law. Id. In contrast, the state court in the instant case clearly did not understand the substance of Goldy’s claim, despite the straightforward manner in which Goldy presented it. Because the state court did not reach any conclusion, reasoned or otherwise, concerning the actual claim raised by Goldy, this Court should have reviewed the merits of the claim de novo, instead of with modified deference. Reviewing the claim de novo, I would uphold the district court’s decision to grant Goldy’s habeas petition with respect to that claim.
White was expected to testify that he had seen Goldy fire his gun with a barrel attachment on it approximately two months before he was arrested, and that Goldy had referred to the attachment at that time as a silencer. Before the start of trial, the trial judge ruled that White’s testimony was irrelevant as to whether Goldy possessed a silencer on July 23, 2001, specifically stating, “I guess whether he’s been, in the past, in possession of a silencer hasn’t got anything to do with this particular case here.” (J.A. at 218-19.) The court also stated that White’s testimony would be more prejudicial than probative. On the second day of trial, Goldy’s counsel sought clarification on whether Goldy would be opening the door to White’s testimony if, on cross-examination, the prosecutor asked Goldy if he had used a silencer when he was with White. Without citing any rules of evidence or case law, the court responded that “[i]f your client denies firing that gun with that item attached to it, then [Whitej’s testimony becomes pertinent.” (J.A. at 183.) Having previously ruled that there was nothing probative about White’s testimony, the judge was now clearly ruling that White’s testimony could be admitted to impeach Goldy testimony on cross-examination regarding a matter that would not have been raised on direct.
Pursuant to M.R.E. 608(b), “[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness’ credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.” Thus, under Michigan law, “the prosecutor may not elicit a denial during the cross-examination of a defense witness and then use that denial to inject a new issue into the case.” People v. Sutherland, 149 Mich. *176 App. 161, 385 N.W.2d 637, 639 (1985). Though Michigan courts have found exceptions to this rule where the extrinsic evidence impeaches a defendant on “matters closely bearing on defendant’s guilt or innocence,” People v. LeBlanc, 465 Mich. 575, 640 N.W.2d 246, 254 (2002) (quotations and citation omitted), the trial court in this case had already ruled that White’s testimony was not an example of such evidence.
Thus, although White’s testimony was inadmissible to impeach Goldy, impeachment would have been the only purpose of the testimony, as both the prosecution and the trial court acknowledged at the time. The majority’s assumptions about what the prosecutor might have argued, had the trial court given him the chance to argue further, are therefore irrelevant; the court had already been quite clear that it viewed White’s testimony as irrelevant, other than for impeachment purposes.
The judge’s ruling that White’s testimony would be admissible if Goldy took the stand was therefore a clear error of law. Nevertheless, Goldy’s counsel did not cite Rule 608(b), and instead argued somewhat incoherently that White’s testimony would be prejudicial. In view of the basic mistake the trial judge made, it is likely that, had Goldy’s counsel cited M.R.E. 608(b), the court would have properly excluded White’s testimony. During Goldy’s evi-dentiary hearing before the district court, Goldy’s trial counsel testified that he had no strategic reason for failing to cite Rule 608(b) or to present pertinent case law to argue that White’s testimony was inadmissible for impeachment purposes. Goldy’s counsel therefore performed deficiently.
A mistake in failing to object to an evidentiary ruling normally might not be such a monumental error as to affect the outcome of a trial. However, in this case, the failure of Goldy’s counsel to press the issue caused Goldy prejudice, inasmuch as Goldy’s entire case appeared to hinge on his testifying.
To understand the importance of Goldy’s testimony to his defense, it is worth recounting the evidence introduced at trial. Detective Dave Loe, the arresting officer, testified that he found the semi-automatic weapon in a closed gun case wrapped in a blanket in Goldy’s trunk, with a magazine containing ammunition inside the gun. However, a photograph of the gun in the trunk shows the magazine outside the gun; Detective Loe explained that he removed the magazine before taking the photograph. Detective Loe testified that Goldy had told him that he was taking the gun to a shop for repairs. He asked Goldy why the magazine was inside the gun, and Gol-dy responded that he had to put it inside the gun in order to fit the gun in the gun case and close the case. At Goldy’s home, Detective Loe found several weapons, all legally owned, including a pistol that contained what Detective Loe called a “barrel modification” attached to it. Goldy had told him the device was an “extender,” but Detective Loe believed that it was a silencer. (J.A. at 266.)
Both the prosecution and the defense called firearms experts who offered disputing testimony about whether Goldy’s extender constituted a silencer, or was capable of significantly muffling the sound of a gunshot. The defense’s expert questioned Detective Loe’s version of events, stating that it was unusual for a police officer to take a magazine out of a gun before photographing the gun as evidence. Another witness for the defense corroborated Gol-dy’s statement that he was taking the gun for repairs; the witness testified that he had been shooting with Goldy three days before Goldy’s arrest, and that Goldy’s gun had been jamming. The witness testified *177 that he saw Goldy put the gun, unloaded, into a case and put the case into his trunk.
Because the evidence against Goldy was so weak — the silencer charge essentially boiled down to a battle of experts, and the evidence that the gun in Goldy’s trunk was loaded was based entirely on Detective Loe’s testimony — Goldy’s testimony could have changed the outcome of the entire trial. During the district court’s evidentia-ry hearing on Goldy’s habeas petition, Goldy’s trial counsel testified that Goldy had informed him prior to trial that the gun in his car was unloaded, and that he never intended the barrel attachment found in his home to be used as a silencer. Goldy’s trial counsel also stated that Goldy possessed a receipt for the attachment, which called the attachment a “conversion kit” and not a silencer; he stated that he would have introduced the receipt as evidence of Goldy’s belief that the extension was not a silencer, but needed Goldy to testify in order to introduce the receipt into evidence. (J.A. at 341.) Goldy’s trial counsel acknowledged that without Goldy’s testimony, Detective Loe’s testimony that Gol-dy had acknowledged that the magazine was inside the gun was unrebutted. Further, the district court made a factual finding, having listened to Goldy’s testimony during the evidentiary hearing, that Goldy would have been a strong witness and that the jury could have found him credible. This Court must accept these factual findings because they are not clearly erroneous. See White v. Mitchell, 431 F.3d 517, 524 (6th Cir.2005).
Goldy’s testimony could have led to a different outcome with respect to both charges, and Goldy’s trial counsel testified that the reason he advised Goldy not to testify was out of fear of White’s impeachment testimony. Whether or not it was wise to advise Goldy not to testify, such a difficult decision would have been unnecessary if Goldy’s trial counsel had responded effectively to the court’s decision to admit White’s testimony. While the court’s evi-dentiary ruling was probably one of a number of matters Goldy’s trial counsel had to juggle simultaneously at trial, his recognition that Goldy’s testimony was crucial should have led him to be prepared in the event the court ruled as it did— particularly since Goldy’s counsel was the one who raised the issue with the court in the first place. The decision to recommend that the defendant testify is one of the most important decisions any defense counsel has to make, and once Goldy’s trial counsel made the decision that Goldy needed to testify, he had a duty to ensure that an obviously incorrect legal ruling did not prevent Goldy from doing so. I therefore respectfully dissent.