# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TEYWON TERREL BECKHAM,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2015

No. 320057
Van Buren Circuit Court
LC No. 13-018842-FC

Before: DONOFRIO, P.J., and O'CONNELL and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Teywon Terrel Beckham, appeals as of right his convictions following a jury trial of assault with intent to do great bodily harm, MCL 750.84, first-degree home invasion, MCL 750.110a(2), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

## I. FACTS

According to Jason Henderson, he, Beckham, and Frank Clay drank and watched videos together on May 22, 2013. After Clay left, Henderson and Beckham decided to get cocaine from Shaun Gil. They purchased shotgun shells and a large knife and then drove to Gil's home in Port of Call Trailer Park.

Fawn Littlefeather Raymond testified that at about 5:00 a.m. on May 23, 2013, she heard feet scuffle outside the bedroom that she shares with Gil. She woke Gil to investigate and called 911. Gil testified that when he walked out of the bedroom, he saw a man standing in the den. The man was wearing a white shirt. He turned around and fired a shot at Gil, who retreated.

Henderson is 5'11" and Beckham is 5'2". Gil described the man as 5'7". Sharon Warren, a neighbor, testified that two gunshots woke her, she ran outside, and she saw a man run behind her home wearing a white t-shirt. She described the man as 5'6" or 5'7". At trial, Vivren Warren testified that the man was 5'9", but he told an officer that the man was 5'11 or 6'.

According to Henderson, he heard two gunshots and then Beckham came back to the SUV. Beckham told Henderson that he thought he had shot Gil, and both men left the trailer park. However, Henderson's SUV broke down before they were able to make it home. Henderson called a friend who brought gasoline, but the SUV still would not start.

-1-

Daniel Hrab testified that he did not know Henderson or Beckham. Hrab was on his way to work when Beckham flagged him down. Hrab testified that Beckham was wearing a white t-shirt and Henderson was wearing a black t-shirt. Beckham asked Hrab to jump-start the SUV. While Hrab was positioning his vehicle, he noticed two guns lying in the ditch. After Hrab unsuccessfully attempted to start the vehicle, he left and called the police. When officers arrested Beckham and Henderson, Beckham was wearing a white t-shirt.

According to Michigan State Police Detective Sergeant Kevin Conklin, when Beckham's shoes were packaged, there was glass in the treads. This glass was later matched to broken glass found in Gil's home. Michigan State Police Trooper Kyle Gorham testified that Beckham told him that he and Henderson both went into the trailer.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Beckham contends that defense counsel provided ineffective assistance when he failed to call Leo Barry, who would have testified that he took Henderson to a neighbor's home so that Henderson could look for jumper cables. We disagree.

A criminal defendant has the fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *Id*.

To prove that defense counsel was not effective, the defendant must show that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). The defendant must overcome the strong presumption that counsel used sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Pickens*, 446 Mich at 312.

We conclude that counsel did not render ineffective assistance when counsel failed to call Barry. Defense counsel's decisions to call and investigate witnesses are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial. See *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002).

In this case, a police report contained Barry's statement that he brought gasoline to Henderson's SUV, but the SUV would not start, and then he briefly drove Henderson to his home to retrieve jumper cables. Barry did not tell police that Henderson changed his shirt, and there is no indication that Barry would have testified at trial that Henderson did so. Accordingly, even had Barry testified that he took Henderson to get jumper cables, there is no indication that Barry's testimony would have been favorable to Beckham. We conclude that Beckham has not

overcome the strong presumption that defense counsel's decision not to call Barry as a witness was objectively unreasonable.

Further, we are not convinced that the result of the proceeding would have been different had counsel called Barry to testify. There was other evidence supporting Beckham's identity as the shooter, including that his shoes had glass shards in them from Gil's home and Henderson's shoes did not. Beckham also admitted to Trooper Gorham that he went inside Gil's home. We are not convinced that the results of the proceeding would have been different had Barry testified.

We affirm.

/s/ Pat M. Donofrio
/s/ Peter D. O'Connell
/s/ Amy Ronayne Krause