# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAKESK DEWAYNE WHITE,

Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 326701
Wayne Circuit Court
LC No. 14-010118-FC

Before: WILDER, P.J., and MURPHY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of first-degree premeditated murder, MCL 750.316(1)(a), three counts of assault with intent to commit murder (AWIM), MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b(1). He was sentenced to mandatory life in prison for each of the two murder convictions, 37 ½ to 75 years' imprisonment for each of the three AWIM convictions, 40 to 60 months' imprisonment for the felon-in-possession conviction, and 5 years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from an incident in which defendant and two accomplices discharged firearms numerous times into a van with five people in it, killing two of them and injuring a third person. A victim of the attack identified defendant at trial as one of the shooters; defendant was previously known to the victim. Additionally, the victim had repeatedly identified defendant as a participant in the shooting prior to trial, including at defendant's preliminary examination. However, on a single occasion, the victim had also recanted his identification of defendant as one of the shooters. This recantation occurred during an audiotaped interview conducted by an investigator employed by an attorney who, at the time, represented one of defendant's accomplices. The victim, in explaining the recantation, testified that he had been kidnapped at gunpoint by two unknown individuals, forced into their car, told, under threat of harm, that he needed to recant, driven to the attorney's office for purposes of recanting, and effectively

-1-

coerced into changing his story in the interview with the attorney's investigator.[1] The victim asserted that the recantation was made under duress and was untrue; he reiterated that it was indeed defendant who was involved in the shooting. The attorney did testify at trial that he did not observe any conduct by the victim indicating that he was at the attorney's office and participating in the interview under duress, or that he otherwise appeared frightened.

On appeal, defendant argues that defense counsel was ineffective, contending that counsel should have subpoenaed the investigator to testify at trial regarding the interview and that counsel failed to properly impeach the victim during cross-examination through tactical use of the interview. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, stated:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

It is important to take into consideration the efforts made by defense counsel relative to the subject matter of the two alleged instances of ineffective assistance of counsel. In an emergency motion, counsel implored the court to allow him to take a deposition de bene esse of

---

[1] We note that there is nothing in the record suggesting that the attorney and his investigator played any role whatsoever in the alleged kidnapping and coercion.

the investigator.[2]  The motion indicated that the investigator was hospitalized and undergoing "extensive back reconstructive surgery" and that he could not be transported to court to testify. At the hearing on the motion, defense counsel explained the situation regarding the investigator's hospitalization, noted that the investigator wished to cooperate, and stated that even if counsel served the investigator with a subpoena, the investigator could not be transported to the court by EMS.  By order dated February 13, 2015, the emergency motion was denied.

On the first day of trial testimony and before any witnesses were called, defense counsel renewed his request to conduct a deposition de bene esse of the investigator.  Counsel now submitted an affidavit from the investigator in which he averred that he had been diagnosed with a fractured spine and spinal stenosis, that he was hospitalized following two back surgeries and would remain hospitalized or in a rehabilitation facility for the near future, and that he was "unable to attend court proceedings," but would be available for a deposition if one could be arranged.[3]  In the midst of dealing with a variety of issues, the trial court did not rule on the matter of deposing the investigator, but, again, there had already been an order entered rejecting defendant's initial request.  Defense counsel also mentioned that he had the transcript and audiotape of the interview and that he would later seek to have those admitted for impeachment purposes.  The victim at issue testified on the first day, describing the crime, identifying defendant as one of the perpetrators, acknowledging his recantation, and explaining the recantation and purported kidnapping.  On cross-examination, defense counsel engaged in aggressive and extensive questioning regarding all of the surrounding circumstances relative to the recantation, such as the fact that the two alleged kidnappers were not in the room where the investigator conducted the interview, yet the victim said nothing to the investigator about any coercion.  Defense counsel was able to elicit testimony that could reasonably be viewed as calling into question the truthfulness of the victim's claim that he had been kidnapped and coerced into recanting.  Also, the victim again acknowledged that he had recanted his identification of defendant during the interview, indicating in the interview that he could not see the shooters when the shooting spree took place.  At one point in the cross-examination, defense counsel began to read or paraphrase snippets from the transcript of the interview, asking the victim for confirmation or denial of the snippets as part of an attempt to impeach the victim. Over objection by defense counsel, the trial court ordered a halt to this manner of cross-examination. The victim's testimony was eventually completed and, following testimony by two other witnesses, the first day of the trial ended.  Defense counsel did not attempt to have the interview transcript or audiotape admitted into evidence during the victim's testimony.

---

[2] The jury was selected on February 5, 2015, but the trial itself did not commence until February 24, 2015.  Defendant's emergency motion was filed on February 13, 2015.

[3] The investigator noted that a transcript of the interview and a copy of the audiotape of the interview had been supplied to the prosecutor a year earlier and that they would also now be given to defense counsel.  The investigator also averred that the victim had "appeared voluntarily" for the interview and then recanted, indicating that he had not seen who fired the shots.

On the second day of trial testimony, defense counsel again raised the issue regarding deposing the investigator, stating that the investigator remained hospitalized and unavailable and that serving the investigator with a subpoena would be "a waste of time." Defense counsel also argued that if he could not utilize testimony by the investigator, the trial court should permit the admission of the audiotape of the interview for impeachment purposes. The prosecutor maintained that defendant was attempting to bolster the impeachment of the victim through use of the audiotape, where the victim had already been confronted with his recantation on cross-examination. The trial court ruled that the audiotape was inadmissible, and there was no further mention or discussion about the investigator or a deposition, nor in regard to possibly admitting the transcript.

On appeal, defendant contends that defense counsel "could have impeached [the victim] with regard to his interactions with [the investigator], which would call into question his claim that he was coerced." According to defendant, defense counsel instead urged, after the victim's testimony had ended and for purposes of his case-in-chief, that the trial court should admit the audiotape into evidence, if the investigator was not going to be able to testify. Defendant then argues:

> While there was no legal basis to permit the admission of the tape recording of the interview, [defense] counsel certainly could have impeached [the victim] with the substance of the interview to the extent that it was a prior inconsistent statement with regard to [the victim's] claim *that he was acting under duress*. [Emphasis added.]

Defendant proceeds to assert that prior inconsistent statements are not hearsay when offered for impeachment purposes, and he also quotes MRE 613(b).[4] Defendant then maintains:

> Clearly counsel could have used the prior inconsistent statement to impeach [the victim]. There is no question that counsel recognized the paramount importance of impeaching [the victim] with the statement. . . . Under MRE 613(b), if a witness is impeached with a prior inconsistent statement, the witness must be afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. As the trial judge correctly pointed out, there was no law that would permit admission of [the] tape recording in [defendant's] case in chief. [Quotation marks omitted.]

---

[4] MRE 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. . . .

This is the sum and substance of defendant's first alleged instance of ineffective assistance. We admit to having some difficulty discerning what exactly defendant is arguing to this panel. First, defendant is plainly not contending that counsel failed to impeach the victim with the interview-based recantation in and of itself, i.e., that the victim did not see the shooters. Indeed, the jury was fully aware of the recantation, as that information was elicited during the prosecutor's direct examination of the victim and again on cross-examination by defense counsel. Defendant appears to be arguing that defense counsel failed to impeach, through use of the interview, the victim's claim that he recanted *under duress*. We initially note that defense counsel, by way of questions concerning the circumstances surrounding the alleged kidnapping and coercion, forcefully cross-examined the victim regarding his claim that he had recanted under duress. Defendant is apparently arguing that some statement made during the victim's interview was inconsistent with the victim's duress testimony, or that the entire interview somehow constituted a prior inconsistent statement in relation to duress. However, defendant does not identify any particular statement made during the interview that was inconsistent with the victim's testimony that he had recanted under duress, although there may have been such a statement.[5] Defendant thus fails to establish the factual predicate for his claim. *Carbin*, 463 Mich at 600. Defendant likewise fails to establish the factual predicate for any claim, assuming it is being made, that the entire interview constituted a prior inconsistent statement, which presumed argument would also lack any legal support. Moreover, on cross-examination, defense counsel attempted to utilize the interview, by reference to the transcript, in order to challenge and impeach the victim's testimony, and the trial court precluded that cross-examination. Defense counsel cannot be deemed deficient for failing to pursue a matter, where the matter was in fact pursued by counsel but rejected by the trial court.

Defendant's argument also seems to suggest that defense counsel's shortcoming was a failure to impeach the victim while the victim was on the stand, as opposed to attempting to do so in defendant's case-in-chief, at which time counsel had sought admission of the audiotape. However, defendant seemingly accepts that the audiotape was inadmissible.[6] To the extent that defendant is arguing that the audiotape or transcript of the interview could have been admitted under MRE 613(b), but only during the victim's testimony, the argument fails because, again, defendant does not identify any inconsistent statement regarding duress. Furthermore, it is clear from the trial court's ruling that it was not prepared to admit the audiotape into evidence at any time, despite counsel's adamant request for admission. Additionally, there is no indication that the victim could not have been recalled to the stand for purposes of the requirement in MRE 613(b) to allow a witness the opportunity to explain or deny a prior inconsistent statement.

In sum, after giving defendant the benefit of assuming multiple constructions of his less than luminous appellate argument, defendant has failed to establish deficient performance by counsel or the requisite prejudice. Defendant has not identified any prior inconsistent statements

---

[5] For example, defendant does not argue that the victim stated in the interview that he was freely and voluntarily engaging in the interview.

[6] We take no position on whether the audiotape was legally admissible or not outside the context of defendant's appellate arguments.

*relative to duress*. And the jury was made fully aware of the recantation and the questionable components of the victim's kidnapping and coercion story. The jurors also heard from the attorney that the victim did not appear to be under duress when he showed up at the attorney's office to participate in the interview. Despite this evidence, the jury found defendant guilty. Reversal is unwarranted on the basis of ineffective assistance of counsel.

Finally, defendant argues that defense counsel was ineffective for failing to subpoena the investigator, contending that counsel should not have assumed that serving a subpoena on the investigator would have been futile. Defendant again fails to establish the factual predicate for his claim of deficient performance, nor has prejudice been shown. Given the investigator's affidavit about his medical situation, hospitalization, and the transportation problem, which averments were never disputed, defendant cannot show with any degree of certainty that subpoenaing the investigator would have actually produced his appearance in court under the circumstances. Also, except for a cursory reference in his affidavit that the victim appeared "voluntarily," there is nothing in the record revealing what the investigator would have testified to had he taken the stand. Further, the attorney testified that the victim did not appear to be under duress, yet the jury convicted defendant. We cannot fault defense counsel for taking the approach of repeatedly seeking approval by the court of a deposition de bene esse. Reversal is unwarranted.

Affirmed.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Peter D. O'Connell