# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MARK SHAPPELL DORCH,

       Defendant-Appellant.

UNPUBLISHED
November 29, 2016

No. 328119
Wayne Circuit Court
LC No. 14-009454-FC

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of second-degree murder, MCL 750.317, five counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 30 to 60 years' imprisonment for the murder conviction, 2 to 10 years' imprisonment for each of the AWIGBH convictions, and 2 years' imprisonment for the felony-firearm conviction. We affirm.

Defendant shot and killed Mary Spears, and he then shot five other individuals when he sprayed bullets into a retreating group of people. The shootings occurred outside a club in Detroit. Defendant claimed that he acted in self-defense. Prior to the shootings, there was an incident inside the club between defendant and Spears, who was with family and friends. Witnesses testified that the two had some sort of exchange, followed by defendant punching Spears in the face. Spears's relatives responded by hitting defendant, who was then escorted out of the venue by security staff. Spears and her circle of friends and family subsequently exited the club.

Once outside, defendant and Spears approached one another. One of Spears's family members testified that she, the family member, yelled out, "He's got a gun, run," and a group of people ran toward Spears and defendant. One witness explained that the group stood behind defendant, unbeknownst to him, and that Spears's fiancé hit defendant "in the back of the head." Defendant asserted that it was at that time he drew his gun from his holster, although video surveillance footage appeared to show that defendant had the gun in his hand before any altercation occurred. Defendant agreed that the video footage showed him "raising [the gun] very quickly" and shooting Spears after he was hit. Defendant testified, "I feared for my life. I was getting attacked by a group of people and I feared for my life." Defendant turned around

-1-

and "emptied the clip" at the people running away from him. Five individuals, aside from Spears, were struck by one or more bullets.

Defendant argues on appeal that he was denied the effective assistance of counsel when defense counsel did not request an instruction on voluntary manslaughter. We granted defendant's motion to remand for a *Ginther*[1] hearing.[2] At the hearing, defense counsel testified that he did not request the instruction because he thought it was "frivolous." Defense counsel indicated that his opinion was based on an enhanced photograph taken from the video footage admitted at trial showing that defendant had his gun drawn before he was hit from behind. Defense counsel also believed that a voluntary manslaughter instruction was not warranted because defendant "was not struck from behind by [Spears]," and therefore Spears "was actually a[n] innocent third person." The trial court concluded that requesting the instruction would have been meritless and denied defendant's motion for a new trial.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Dorch*, unpublished order of the Court of Appeals, entered January 21, 2016 (Docket No. 328119)

Voluntary manslaughter is a necessarily included lesser offense of murder, and therefore "when a defendant is charged with murder, an instruction for voluntary . . . manslaughter must be given if supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). "[D]etermining whether a rational view of the evidence may support . . . manslaughter . . . requires considering whether a rational jury could conclude that the defendant did not act with malice . . . ." *People v Holtschlag*, 471 Mich 1, 15 n 8; 684 NW2d 730 (2004). "[T]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich at 535. "[P]rovocation is not an element of voluntary manslaughter." *Id.* at 536. Instead, "provocation is the circumstance that negates the presence of malice." *Id.* "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to *act out of passion rather than reason*." *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998) (emphasis added). "Passion, in the context of voluntary manslaughter, describes a state of mind incapable of cool reflection." *People v Hopson*, 178 Mich App 406, 411; 444 NW2d 167 (1989). "[T]he provocation must be adequate, namely, that which would cause a *reasonable person* to lose control." *Sullivan*, 231 Mich App at 518.

Defendant's own testimony reflected that he did not act out of passion and did not lose control; rather, his testimony revealed that upon being assaulted, he acted out of reason, reflection, however brief, and with control, determining that he needed to shoot Spears in order to defend himself. The evidence did not indicate that, upon being struck from behind, defendant became incensed and lost control, provoking him to shoot Spears out of passion. Defendant's argument on appeal conflates self-defense and heat of passion, suggesting that evidence showing that an act was taken in self-defense necessarily supports a voluntary manslaughter instruction. Moreover, the question of whether a rational view of the evidence supported a voluntary manslaughter instruction was, at best, a close question, such that the decision to forgo requesting a voluntary manslaughter instruction cannot be viewed as falling below an objective standard of reasonableness. In an earlier trial regarding the shootings, the jury was hung on the offense of second-degree murder, with defendant solely arguing self-defense, absent any claim of or instruction on voluntary manslaughter. Counsel's decision to take that same approach in the trial here was quite reasonable and did not constitute ineffective assistance.

Additionally, assuming deficient performance by defense counsel, defendant simply cannot show the requisite prejudice. First, given the ruling at the *Ginther* hearing, the trial court ostensibly would not have instructed on voluntary manslaughter even had an instruction been requested by defense counsel. Second, and more importantly, the jury determined that defendant indeed acted with malice in finding him guilty of second-degree murder, and it rejected the claim of self-defense, necessarily concluding that the prosecution had proven beyond a reasonable doubt that defendant had not acted in self-defense. And defendant relies on the very same evidence that he argued to the jury in support of his self-defense theory to support his voluntary manslaughter argument on appeal. Therefore, it would be nonsensical for us to conclude that the jury, which did not accept the self-defense claim, would have been open to finding defendant guilty of voluntary manslaughter instead of second-degree murder. Reversal is unwarranted.

Defendant also argues that he was denied his constitutional right to a jury trial when the trial court ordered him to pay restitution for Spears's funeral expenses, given that restitution is a

-3-

form of punishment and any underlying supportive facts regarding the amount owed were for a jury to resolve. We rejected this precise argument in *People v Corbin*, 312 Mich App 352, 371-373; 880 NW2d 2 (2015). Accordingly, being bound by *Corbin*, MCR 7.215(J)(1), we reject defendant's argument. And defendant's associated claim of ineffective assistance based on the failure of defense counsel to raise the issue below must fail, as counsel is not required to raise futile objections, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), nor can prejudice be established.

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan