# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KEAIRA CARMITA HAMPTON,

      Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 319591
Wayne Circuit Court
LC No. 11-003335-FC

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of two counts of assault with intent to commit murder, MCL 750.83, for her role as the driver in a drive-by shooting. Following her convictions, defendant filed a motion for new trial based on the ineffective assistance of defense counsel. The court entertained the motion at an evidentiary hearing, but ultimately denied relief. Trial counsel committed serious errors in judgment in defending against the charges. However, no error was so prejudicial that it could affect the outcome of the trial in light of uncontradicted satellite-tracking evidence placing defendant in the right place at the right time to participate in the shooting. We affirm.

## I. BACKGROUND

Shortly before 5:00 p.m. on November 7, 2010, Roderick Dotson was driving eastbound on McNichols in Detroit with Marshaun Dunigan in the passenger seat. The men noticed a cream-colored Lincoln following them. The Lincoln was driven by a female with a male passenger. Near the intersection of McNichols and Outer Drive, the Lincoln pulled alongside Dotson's vehicle. The passenger lowered his window and fired several shots at Dotson and Dunigan. Dotson tried to drive away and collided with a brick wall. Both men suffered nonfatal injuries.

Dotson allegedly recognized the shooter as Jaison Holt, a man who had recently threatened to kill him while at a night club. Holt was tried separately from defendant. Defendant was a friend of Holt's, matched the general description of the driver and was wearing an ankle monitor in connection with an unrelated matter. A detective described that an "electronic monitoring tether is . . . a GPS device transmitter . . . placed on your ankle. It's secured, and it calls out to the satellite every minute . . . ." The records are housed on an Internet server. Satellite tracking evidence placed defendant in the area at the time of the shooting.

-1-

Specifically, between 4:48 and 4:50 p.m., defendant travelled eastbound on McNichols from Grand River Avenue past Outer Drive and turned onto Sutherland Street approximately three blocks later. Moreover, defendant's mother owned a cream-colored Lincoln.

Defendant presented a mistaken-identity defense. Alibi witnesses claimed that defendant was en route to Ypsilanti at the time of the shooting despite that GPS tracking showed that defendant's trip to Washtenaw County did not begin until well after 5:00 p.m. The witnesses also insisted that the cream-colored Lincoln was parked in the family's garage. Defendant provided no explanation for the tether satellite-tracking evidence. The jury rejected this defense and convicted defendant as charged.

## II. ASSISTANCE OF COUNSEL

Defendant's sole contention on appeal is that the trial court erred in denying her motion for a new trial, premised on the ineffective assistance of her trial counsel. This issue is fully preserved for appellate review as the trial court conducted a *Ginther*[1] hearing to flesh out defendant's challenges to counsel's performance before denying her motion for a new trial. See *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The lower court's findings of fact are reviewed for clear error. *Id.* Questions of constitutional law are reviewed de novo. *Id.* Further, this Court reviews a trial court's decision to grant or deny a new trial for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558-559; 797 NW2d 684 (2010). An abuse of discretion occurs when the trial court's decision falls outside the principled range of outcomes. *People v Malinowski*, 301 Mich App 182, 185; 835 NW2d 468 (2013).

" '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). Generally, a defendant's claim of ineffective assistance includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Specifically, the defendant must establish that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The defendant must overcome the strong presumptions that her "counsel's conduct [fell] within the wide range of reasonable professional assistance," and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. This Court will not substitute its judgment for that of defense counsel on matters of strategy, nor will it employ the benefit of hindsight to assess the competence of defense counsel. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## A. LINE-UP

Defendant first contends that the photographic array employed by law enforcement was highly suggestive and that defense counsel was ineffective for failing to demand a fair corporeal lineup or a second photographic identification procedure. Supporting defendant's theory, the attorney who represented defendant at the photographic identification procedure, Tim Malefyt, testified that Dunigan was unsure defendant's picture depicted the driver of the Lincoln, but the officer told Dunigan to place his initials by that picture anyway. Malefyt also suggested that the photographic lineup presented to Dunigan and Dotson was unduly suggestive because defendant was wearing a different type of shirt and had a different appearance than the subjects in the other photographs.

Prior to trial, defendant moved to suppress the original photographic array identification, but the trial court denied this request after a full hearing. Defendant sought and was granted permission to conduct a second line-up, but failed to follow through. Thereafter, defense counsel attempted to undermine the credibility of the photographic identifications at trial. Defendant presented Malefyt as a witness and questioned him about the suggestive nature of the lineup. Counsel was then able to argue that the victims' identification of defendant was incredible. Pursuing a second lineup could have been detrimental as the witnesses may have then definitively identified defendant. It also ultimately would have proven futile; Dunigan testified at trial and identified defendant as the driver of the cream-colored Lincoln. We discern no ineffectiveness in this regard.

## B. DOTSON'S PRELIMINARY HEARING TESTIMONY

Defendant challenges her counsel's failure to object to the admission of Dotson's testimony given at the preliminary examination in Holt's case. Dotson failed to appear for the preliminary examination in defendant's case as well as the trial. Dotson's testimony focused largely on his connection with Holt. Dotson testified that a "[y]ounger woman" was driving the cream-colored Lincoln involved in the shooting.

The admission of Dotson's earlier testimony violated defendant's right to confront the witnesses against her. "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *People v Buie*, 491 Mich 294, 304; 817 NW2d 33 (2012) (quotation marks and citation omitted). "The Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination." *People v Payne*, 285 Mich App 181, 197; 774 NW2d 714 (2009), citing *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Defendant obviously was not represented at Holt's preliminary examination and had no opportunity to cross-examine the witness. Moreover, Holt's attorney had no reason to develop testimony regarding Dotson's identification of the driver; the driver was not his client. Compare MRE 804(b)(1) (excepting from the hearsay exclusion "[t]estimony given as a witness at another hearing," even in a different proceeding, "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony . . .").

Dotson's testimony was also prejudicial to defendant. Other evidence tied defendant to Holt and explained why the pair would have been driving together on the day in question. Dotson definitively identified Holt as the shooter and placed Holt in a cream-colored Lincoln, like that owned by defendant's mother, with a "[y]ounger woman." Dunigan also identified Holt, but his identification testimony was weaker as it was not based on a prior acquaintance with the shooter and because Dotson was closer to the shooter during the incident. Accordingly, we agree with defendant that there was no reasonable explanation for defense counsel to stipulate to the admission of Dotson's prior testimony.

Although counsel's decision to stipulate to the presentation of otherwise inadmissible evidence was prejudicial, it was not so prejudicial that it affected the outcome of defendant's trial. See *Trakhtenberg*, 493 Mich at 51. Defendant's only defense was that she was not in the right place at the right time to be involved in the shooting. Yet, uncontradicted satellite tracking of defendant's ankle monitor placed her at the intersection where the shooting occurred at the correct time. Absent any defense to that extremely damning evidence, defense counsel's errors in regard to Dotson's testimony do not merit a new trial.

## C. DOTSON'S AUDIO RECORDING

At some point prior to trial, Dotson allegedly visited defendant's home and spoke to her father, Keith Hampton. Hampton testified at the *Ginther* hearing that Dotson came to his home uninvited on four separate occasions. Hampton made audio recordings of these meetings.[2] Those audio recordings were admitted into evidence at the hearing, but no transcript was made. Dotson allegedly told Hampton that the driver involved in the shooting "was a pretty girl" but that "he wasn't able to identify her." Defense counsel found the recordings to be of questionable integrity:

> I felt the circumstances in which those audio recordings were allegedly taken place. . . . Mr. Hampton couldn't give me information in regards as to how Mr. Dotson cam to be at his house. He stated that he didn't contact him but he just magically appeared one day. He couldn't be contacted, there was no way to just verify the information as stated in the audio . . . .

Counsel "had a very serious concern" about "possible witness tampering." Therefore, she did not share the evidence with the prosecution or attempt to use it at trial.

Defendant posits on appeal that counsel opted not to introduce this evidence simply because she "did not know how to authenticate the recording." This suggests a failure to adequately investigate. However, counsel specifically identified her concern that Hampton had tampered with the witness as her reason for not presenting the recordings. Witness tampering is a criminal offense. MCL 750.122. All attorneys bear an ethical duty to avoid knowingly presenting false evidence. MRPC 3.3(a)(3). Counsel is not ineffective when she refuses to assist her client in the presentation of false testimony. *Nix v Whiteside*, 475 US 157, 174-175; 106 S Ct

---

[2] Hampton may also have made a video recording of the meetings.

988; 89 L Ed 2d 123 (1986). Accordingly, we discern no deficiency in counsel's performance in this regard.

## E. IMPEACHMENT OF DOTSON

Defendant also challenges counsel's failure to present evidence of Dotson's previous convictions for offenses involving theft or dishonesty to impeach his credibility. Dotson's prior preliminary examination testimony was hearsay admitted under an exception when the witness is deemed unavailable. MRE 801(c); MRE 804. When hearsay statements are admitted at trial, "the credibility of the declarant may be attacked, and if attacked may be supported, by evidence which would be admissible for those purposes if declarant had testified as a witness." MRE 806. A party may impeach a declarant's credibility with evidence that he has been convicted of a crime containing an element of dishonesty, false statement, or theft. MRE 609(a). Dotson's criminal record contained several convictions containing an element of dishonesty, including identity theft, fraud and false pretenses, which could have presented at trial even though Dotson was not present. The failure to discredit Dotson compounded counsel's error in stipulating to the admission of Dotson's prior testimony. However, any error in this regard was not outcome determinative. As already noted, absent any challenge to the satellite evidence undermining her entire alibi defense, defendant had no reasonable likelihood of acquittal.

## F. 911 CALLS

At trial, defense counsel presented into evidence audio recordings of three calls from Dunigan and Dotson to 911 after the shooting. The first call was made at 4:51 p.m. Defense counsel testified at the *Ginther* hearing that she presented the 911 tapes because they impeached Dotson's testimony that the shooting occurred around 4:30 p.m. Unfortunately for defendant, GPS tracking of her tether placed her at the location of the shooting between 4:48 and 4:50 p.m. The time stamped 911 recordings corroborated the prosecution's theory that she was in the right place at the right time to participate in the shooting. Rather than discrediting Dotson and harming the prosecution's case, the tapes tended to remediate Dotson's error in memory regarding the exact time he was shot. We can discern no reasonable strategy in defense counsel assisting the prosecutor to make his case.

Counsel's error did not affect the outcome of defendant's trial, however. Dunigan testified at trial that the shooting occurred at "4:30, closer to five." Dunigan admitted at trial that he, like Dotson, had previously reported that the shooting happened between 4:00 and 4:30. Detroit Police Sergeant Todd Eby testified on direct examination that officers were dispatched to the scene "shortly after 4:51 p.m." when dispatch received the first 911 call. Accordingly, information regarding the time of the shooting reached the jury by other means.

## G. LESSER INCLUDED OFFENSES

The prosecutor charged defendant with the alternate lesser included offenses of assault with intent to do great bodily harm less than murder and assault with a dangerous weapon. In her closing argument, defense counsel focused solely on the mistaken identity defense. Counsel made no attempt to urge the jurors to convict defendant of a lesser offense in the event they

disbelieved the defense theory. Defendant now contends that this was error and resulted in her conviction of the most severe charge.

Counsel employed sound trial strategy in limiting her closing argument. Convincing the jury that mitigating circumstances reduced defendant's level of culpability would have been inconsistent with the chosen defense, which if believed, would require outright acquittal. Such contradictory argument from defense counsel could have confused the jury as well. That counsel's chosen strategy was ultimately unsuccessful does not render her representation ineffective in this regard. See *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

## H. COMMUNICATION OF PLEA OFFER

Defendant notes that defense counsel discussed with her a plea bargain offered by the prosecutor under which she would face a 3 to 5-year prison sentence. Defendant complains, "the potential of a much harsher sentence based on a certain set of guidelines was never properly explained" to her. Defendant's minimum sentencing guidelines range was calculated at 9 to 15 years,[3] a fact of which defendant claims she was ignorant until sentencing. Had she been aware of the sentencing consequences after trial, defendant contends that she would have more seriously considered the plea offer.

There simply is no record evidence that counsel failed to advise defendant of her possible minimum sentencing guidelines. Rather, a discussion on the record at a pretrial hearing supports that attorney and client discussed the plea offer and that defendant rejected it. Accordingly, we discern no grounds to find counsel's performance deficient in this regard.[4]

## I. FAILURE TO OBJECT TO DEFENDANT'S CRIMINAL HISTORY

Finally, defendant contends that the prosecutor presented evidence at trial that she had been charged with assault while in high school. This charge did not lead to a conviction and therefore counsel should have objected to its admission, defendant continues. Defendant

---

[3] The trial court ultimately imposed a downward-departing sentence of 7 to 15 years, noting that a sentence within the guidelines range would be greater than that imposed against the individual who committed the shooting.

[4] In defendant's appellate brief, she describes that she was at a disadvantage during the plea negotiations because "[s]he was very naïve and had never been charged with a crime before." This argument is highly disingenuous. In the very next paragraph, defendant concedes that she "had a prior assault charge while she was in eleventh grade at Robichaud High School." Defendant was wearing an ankle monitor at the time of the current offense. Moreover, she was placed in Prior Record Variable Level C at sentencing. Even if defendant's prior illegal conduct was resolved through a juvenile proceeding, defendant is not a stranger to the justice system. Appellate counsel should more closely protect the integrity of his signature. See MCR 7.212(C)(9) (appellant's brief must contain a signature); MCR 2.114(D) (an attorney's signature on a court pleading certifies the attorney's belief that the pleading is "well grounded in fact").

provides no record citation guiding this Court to where such evidence was placed before the jury. Our record review reveals no mention of defendant's prior bad conduct. The prosecution witnesses provided no explanation to the jury regarding defendant's ankle monitor. Accordingly, this challenge falls flat.

We affirm.


/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher