# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LEON LEROY PLOTTS,

Defendant-Appellant.

UNPUBLISHED
August 11, 2015

No. 315223
Newaygo Circuit Court
LC Nos. 12-010279-FH;
        12-010280-FH

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

In trial court file no. 12-010279-FH, defendant appeals as of right his jury trial conviction of one count of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a) (penetration involving a person, SP, under 13). In trial court file no. 12-010280-FH, defendant appeals as of right his convictions of one count of first-degree CSC, MCL 750.520b(1)(a); and two counts of second-degree CSC, MCL 750.520c(1)(a) (sexual contact involving a person, KB, under 13). Defendant was sentenced to 25 to 70 years' imprisonment for each of his first-degree CSC convictions, and to 5 to 15 years' imprisonment for each of his second-degree CSC convictions. We affirm.

## I. BACKGROUND

On June 3, 2012, KB, who was under the age of 13, told her father that defendant touched her "in the naughty spot." KB's father called the police. Chris Boven, an officer with the Michigan state police, interviewed KB, and indicated that KB told him that defendant touched her twice while she was sitting on a couch with him. On July 9, 2012, KB was interviewed at the Andre Bosse Center (ABC). Boven testified at trial that he listened to this interview and during it, KB provided further details regarding defendant touching her. Melissa Peterson, a therapist at the Children's Advocacy Center in Muskegon, Michigan, performed a medical exam on KB and interviewed her. During this interview, KB told Peterson that defendant put his finger inside her vagina and put his penis in her mouth. KB testified at trial that while sitting on the couch with defendant, he lifted her shirt and bra and sucked on her breasts. She testified that on another occasion he touched her under her underwear and ran his finger up and down her vagina. She testified that another time he put his finger in her vagina as they sat on the couch. And, she testified that on another occasion, they were sitting on the couch together and defendant grabbed her head and put his penis inside her mouth.

-1-

SP was a 27-year-old woman at the time of trial. She testified that approximately 15 years earlier, she was living with defendant who was married to SP's mother at the time. Defendant sexually abused her multiple times when she was younger than 13. On more than one occasion, defendant entered SP's bedroom at night when she was in middle school and put his penis in her vagina, and he once put his penis in her anus. SP also testified that defendant penetrated her vagina with his fingers while sitting with her on a couch. AH testified at trial that SP was her sister; that 15 years before trial she saw defendant touching, biting, and sucking on SP's breasts; and that when AH was between 13 and 16 years old defendant put his penis on her back. After defendant was convicted, he moved the trial court for a new trial based on ineffective assistance of counsel. After *Ginther*[1] hearings, the trial court held that defense counsel was not ineffective and denied defendant's motion.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

"In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence." US Const, Am VI. "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation omitted). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687. Michigan law does not grant a different level of protection with regard to assistance of counsel from that of federal law. *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994).

First, in a claim for ineffective assistance of counsel, the defendant has the burden of showing "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment . . . ." *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002) (quotation marks omitted). Specifically, counsel's performance must fall "below an objective standard of reasonableness." *Strickland*, 466 US at 688. Second, the defendant must show that "the deficient performance prejudiced the defense." *LeBlanc*, 465 Mich at 578 (quotation omitted). The defendant must show that his attorney's "performance so prejudiced him that he was deprived of a fair [proceeding]." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). "To establish prejudice, he must show a reasonable probability that the outcome would have been different but for counsel's errors." *Id.* There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *LeBlanc*, 465 Mich at 578 (quotation omitted). Defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks omitted). This Court will not second-guess matters of trial strategy. *People v Henry*, 239 Mich App 140, 149; 607 NW2d 767 (1999).

### A. Objections as to Hearsay

Defendant first argues that defense counsel was ineffective for failing to object—either at trial or in a pre-trial motion in limine—to Boven and Peterson's testimony regarding KB's out-of-court statements on the grounds that KB's statements constituted inadmissible hearsay.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A declarant "is a person who makes a statement." MRE 801(b). A statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). "Hearsay is not admissible except as provided by these rules." MRE 802. Thus, hearsay may be admissible if it falls under an exception. MRE 802.

There is no dispute that Boven and Peterson testified as to statements that KB made out of court. Therefore, if this testimony was offered to prove the truth of the matter asserted in those statements, the testimony is inadmissible hearsay unless an exception applies. MRE 801(c); MRE 802. With respect to applicable exceptions, defendant argues only that defense counsel was ineffective for failing to object to Boven and Peterson's testimony as inadmissible under MRE 803A. MRE 803A provides in relevant part:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

Peterson's testimony regarding what KB told her in their interview is admissible under the medical treatment exception to hearsay. MRE 803(4) states that the following are not excluded by the hearsay rule: "Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." Because KB's statements to Peterson were made in the course of an interview conducted for the purpose of medical treatment or diagnosis in connection with Peterson's medical examination of KB, Peterson's testimony regarding what KB told her in that interview falls under MRE 803(4). *People v Meeboer*, 439 Mich 310, 322; 484 NW2d 621 (1992). Therefore, any objection to Peterson's testimony on hearsay grounds would likely have been overruled, and "[c]ounsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Defendant is, however, correct that Boven and Peterson's testimony regarding KB's out-of-court statements do not fall under the MRE 803A exception to hearsay; KB was not under the age of ten when she made the statements. MRE 803A(1). If defense counsel had objected to Boven and Peterson's statements regarding KB's out-of-court statements as inadmissible hearsay, under MRE 803A, this objection would have been sustained unless a different exception applied. MRE 802.

Contrary to the prosecution's argument, Boven's testimony regarding what KB told him was not offered for the purpose of showing why police initiated their investigation; rather, the investigation began before Boven questioned KB. Specifically, KB's father previously told Boven what KB said. On the record before us, we can discern no purpose for which Boven's testimony about what KB said was admitted other than for the truth asserted therein. Therefore, the testimony was inadmissible hearsay.

Even though Boven's testimony about KB's out-of-court statement was inadmissible hearsay, defense counsel testified at the first *Ginther* hearing that he purposefully did not object to Boven and Peterson's testimony regarding KB's out-of-court statements because the jury was inattentive when Boven and Peterson were testifying as to these statements, and defense counsel thought that if he objected to their testimony, the jury would pay more attention to it. Further, we find the failure to object, along with the failure to file a motion in limine to preclude the testimony in the first place, was within reasonable trial strategy employed by defense counsel to demonstrate how KB's statements regarding defendant's alleged abuse changed over time. See, e.g., *People v Douglas*, 496 Mich 557, 586; 852 NW2d 587 (2014). When cross examining Peterson, defense counsel read into evidence a portion of a police report that summarized KB's interview at ABC where KB said that defendant asked her to touch his penis. Peterson testified that KB did not tell her this information. And, when cross examining KB, defense counsel asked her about differences between what she stated to police and what she testified to at trial. KB could not explain why she told police something contrary to her trial testimony. On this record, defendant has not overcome the presumption that defense counsel's failure to object was a matter of trial strategy, and this Court will not second-guess defense counsel's strategy. *Id.*; *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012) vacated in part on other grounds 493 Mich 864 (2012). Therefore, defense counsel's performance in failing to object to Boven and Peterson's testimony did not fall "below an objective standard of reasonableness." *Strickland*, 466 US at 688. Moreover, even if we reached the contrary conclusion, defendant is not entitled to relief.

Defendant has failed to "show a reasonable probability that the outcome would have been different but for counsel's errors." *Grant*, 470 Mich at 486. First, KB's testimony was sufficient by itself for the jury to convict defendant of one count of first-degree CSC and two counts of second-degree CSC. The testimony of a victim in a CSC case need not be corroborated. *People v Phelps*, 288 Mich App 123, 133; 791 NW2d 732 (2010), lv den 488 Mich 994 (2010); MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."). Moreover, the testimony of SP and AH was properly considered by the jury as common plan or scheme evidence. MCL 768.27a. The evidence thus overwhelmingly supported defendant's convictions. We therefore cannot conclude that there is a "reasonable probability that the outcome would have been different but for" defense counsel's failure to object to Boven and Peterson's testimony. *Grant*, 470 Mich at 486

B. Failure to Investigate Funds Claim

Defendant next argues that defense counsel was ineffective for failing to properly investigate the availability of funds to hire an expert witness, and for failing to hire Katherine Okla or Ronald Vanderbeck as experts. The United States Supreme Court has held that a defense counsel's performance can fall below an objective standard of reasonableness where counsel fails to investigate the law with regard to the availability of funds to hire an expert witness for a criminal defendant. *Hinton v Alabama*, ___ US ___, ___; 134 S Ct 1081, 1088-1089; 188 L Ed 2d 1 (2014). Here it is undisputed that defendant did not qualify for state funds to hire an expert, see MCL 775.15, and the record supports that defense counsel's investigation into funding was adequate. Additionally, the record supports that defense counsel's performance was not objectively unreasonable for his failure to hire Okla or Vanderbeck.

At the first *Ginther* hearing, Betty Kruger testified that she was defendant's power of attorney (POA). Kelli Proctor testified that she became defendant's POA after Kruger indicated that she was no longer comfortable handling defendant's assets. Defense counsel testified that he had ongoing discussions with Kruger, Proctor, and defendant regarding preparation for the case.

Defense counsel testified that he told Kruger that they needed to hire an expert to counteract KB and SP's allegations against defendant, and that he indicated on numerous occasions the importance of hiring an expert to testify about SP's delayed reporting of abuse. The record suggests that defense counsel made Kruger aware of how much experts cost and of the fact that it would take more than $2,500 to hire one. Defense counsel also testified that Kruger expressed that she doubted defendant's innocence and that defendant could not afford Okla. Kruger and Proctor gave defense counsel $2,500 to hire an expert. In light of Okla's testimony that she would have charged approximately $5,000 to assist with defendant's case, this amount was insufficient to hire Okla. We acknowledge that Kruger testified that the sale of defendant's property yielded $12,000 available to hire an expert witness, but there is no record evidence supporting that Kruger and Proctor made more than $2,500 available to defense counsel to hire an expert. Because defense counsel was in frequent communication with defendant about trial preparation, made Kruger and Proctor aware of the need for and cost of an expert, and Kruger and Proctor did not make sufficient funds available to hire an expert, the trial court did not clearly err in finding that defense counsel was not ineffective for failing to investigate the funds available to hire an expert or in failing to hire Okla.

Furthermore, the evidence supports that defense counsel was not ineffective for failing to hire Vanderbeck. Defense counsel contacted Vanderbeck as a potential expert in early December 2012, told Vanderbeck when the trial would begin, and thereafter sent Vanderbeck a fax on December 17, 2012, asking whether he would review defendant's case for $250. Defense counsel testified he called Vanderbeck after sending the fax but Vanderbeck was on vacation. Defense counsel further testified that Vanderbeck did not respond to him until January 2013, after defendant's trial was over. Although Vanderbeck testified that defendant never attempted to contact him after the initial contact in early December 2012, defense counsel's telephone records indicate otherwise. On this record, the trial court did not clearly err in finding that defense counsel was not ineffective for failing to hire Vanderbeck. In sum, defendant has failed to show that defense counsel's performance in investigating the availability of funds and in not

hiring Okla or Vanderbeck fell "below an objective standard of reasonableness." *Strickland*, 466 US at 688.

Even if defendant could show that defense counsel's performance fell below an objective standard of reasonableness, defendant has still failed to show prejudice. Absent a showing of prejudice, a defense counsel's failure to investigate does not amount to ineffective assistance of counsel. *People v Caballero*, 184 Mich App 636, 640-641; 459 NW2d 80 (1990). Okla and Vanderbeck testified at the *Ginther* hearing about what testimony they could have offered. The record showed that defense counsel was aware of the reasons an expert would have been beneficial, and it also showed that defense counsel endeavored to compensate for the lack of an expert by means of his own examination and cross-examination of witnesses at trial. For example, while cross-examining KB's father, defense counsel tried to show that his prior derogatory statements to KB about defendant influenced her to invent allegations against defendant, and to show the father's bias. During defense counsel's cross-examination of Boven, he elicited testimony indicating that the manner and location where he interviewed KB was not ideal for the interview. See *People v Trakhtenberg*, 493 Mich 38, 46; 826 NW2d 136 (2012). During defense counsel's cross examination of Peterson, he elicited testimony that her medical examination of KB did not show evidence of abuse. And, defense counsel elicited how KB's statements at the ABC differed from her statements to Peterson, thus further impeaching KB's credibility. In addition, defense counsel impeached KB's credibility when he cross-examined her regarding why she kept returning to the couch where defendant allegedly abused her, and he questioned her regarding inconsistencies in her statements. Defense counsel's failure to hire an expert did not result from his inadequate investigation into defendant's case, but rather from insufficient funds available to hire an expert. Defendant's submitted supplemental authority, *People v Ackley*, ___ Mich ___; ___ NW2d ___ (2015) (Docket No. 149479), does not change our holding. In *Ackley*, our Supreme Court held that counsel was ineffective for completely failing to contact an expert in the defendant's favor and for failure to educate himself regarding the law and issues of the defendant's case. *Id*. slip op at 7-9. In contrast, defendant's counsel here contacted multiple experts favorable to defendant's theory, understood their positions and knew their fees. Again, in defendant's case it was the availability of funds, and not counsel's efforts, that precluded retaining an expert in defendant's favor. Defendant admits this much in recognizing that his case is distinguishable from *Ackley* because *Ackley* did not involve the issue of the availability of funds to hire an expert. We find *Ackley* inapposite. Based on the record before us we do not conclude that defense counsel's performance fell below an objective standard of reasonableness.

C. Failure to Move for Severance Claim

Finally, defendant argues that defense counsel was ineffective for failing to move the trial court to sever the trial with regard to KB and SP. "There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial." *People v Etheridge*, 196 Mich App 43, 52-53; 492 NW2d 490 (1992). MCR 6.120(B)(1) states as follows with regard to joinder and severance for a single defendant:

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

In this case, a motion to sever would most likely have been denied if made. Defendant's alleged offenses regarding both KB and SP were related for purposes of MCR 6.120(B)(1)(c) because "defendant engaged in ongoing acts constituting parts of his overall scheme or plan . . . ." *People v Gaines*, 306 Mich App 289, 305; 856 NW2d 222 (2014); quoting *People v Williams*, 483 Mich 226, 235; 769 NW2d 605 (2009). Defendant had a domestic relationship with both girls and abused them when their mothers were at work. He often abused both girls while sitting with them on a couch. Therefore, defense counsel's motion to sever the trial would have been rejected, and "[c]ounsel is not ineffective for failing to make a futile objection." *Thomas*, 260 Mich App at 457.

We further note that there is no reasonable probability that, but for counsel's failure to move for separate trials, the outcome would have been different. The testimony of KB, AH, and SP would have been admissible in each trial if the trials were separated. MCL 768.27a provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Defendant's abusive behavior toward KB, AH, and SP meets the relevant criteria and was relevant in each trial to show an overall scheme or plan of abuse under MCL 768.27a. *Gaines*, 306 Mich App at 305. Furthermore, MRE 403 would not preclude admission of the respective testimonies in the separate trials to show a scheme or plan of abuse because of the similarity of these acts, and because "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012). Therefore, "defendant's actions against each victim were admissible in each case pursuant to MCL 768.27a, [and] each victim would have been required to testify in each trial if the cases were tried separately." *Gaines*, 306 Mich App at 305. For that reason, defendant has not shown how defense counsel's "deficient performance prejudiced the defense." *LeBlanc*, 465 Mich at 578 (quotation omitted). Moreover, as defense counsel testified at the first *Ginther* hearing, defendant's family did not have enough money to pay for two trials and two trials would give the prosecution two chances to have defendant convicted. Defendant has not overcome the presumption that defense counsel's failure to object was not trial strategy, and this Court will not second-guess defense counsel's strategy. *Grant*, 470 Mich at 486; *Henry*, 239 Mich App at 149.

In sum, defense counsel was not ineffective. *Strickland*, 466 US at 686, 688. Because defense counsel was not ineffective, the trial court's denial of defendant's motion for a new trial was not "outside the range of principled outcomes[,]" *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011); and thus, the trial court did not abuse its discretion in denying the motion, *People v Miller*, 482 Mich 540, 558; 759 NW2d 850 (2008).

-7-

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Cynthia Diane Stephens