# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN LEE DOWNS,

        Defendant-Appellant.

UNPUBLISHED
August 9, 2016

No. 326841
St. Clair Circuit Court
LC No. 14-002025-FH

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of operating while intoxicated, third offense, MCL 257.625(1), and operating with a suspended license, MCL 257.904(1). The trial court sentenced defendant as a third felony offender under the motor vehicle code, MCL 257.625(9), and as a fourth habitual offender, MCL 769.12, to 2 to 20 years' imprisonment for his operating while intoxicated conviction, and to time served for his operating with a suspended license conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

During the early morning hours of July 28, 2014, defendant arrived at Murphy's Inn, a bar and restaurant in St. Clair, Michigan. Defendant was served two beers before Paul Brunhuber, the owner of Murphy's Inn, believing defendant to be intoxicated, directed his employees not to serve defendant any more alcohol. As defendant prepared to leave the inn, Brunhuber offered to arrange transportation home for defendant. Defendant refused and began walking to his car, a white Trans-Am. Brunhuber followed defendant to his car and informed defendant that he would call the police if defendant attempted to drive home. As defendant got into his car, Brunhuber called 911 and told the operator that one of his patrons was attempting to drive home drunk. Brunhuber testified that he was right next to defendant's vehicle when he called 911. Defendant then drove over a parking block and out of the parking lot. Brunhuber testified that defendant was alone throughout the entire incident.

Shortly thereafter, William Sedwick observed a white Trans-Am traveling at a high rate of speed as it approached the intersection of Wadhams and Gratiot. The Trans-Am ran through a flashing red light, went off the road, and struck a tree. Sedwick parked his vehicle at an auto repair shop across the street from the crash and called 911. Sedwick then drove over to the

-1-

scene, where he observed defendant behind the wheel of the Trans-Am. Sedwick testified that the Trans-Am was severely damaged, and that defendant did not appear to comprehend the severity of the accident, in light of defendant's request that Sedwick give his car "a jump."

Deputy Curtis Spens of the St. Clair County Sheriff's Department arrived at the scene of the accident. Spens had been notified by his dispatcher to be on the lookout for a white Trans-Am that had left Murphy's Inn. Spens observed defendant standing near a van that had stopped at the scene of the accident. Defendant informed Spens that his wife, Lynn Downs, was driving at the time of the accident and that she had been picked up from the scene of the accident by his daughter, Korren Downs, to seek help. After defendant refused a field sobriety test, Spens placed him under arrest. A subsequent blood test revealed that defendant had 0.259 grams of alcohol per 100 milliliters of blood shortly after the accident.

Defendant was convicted as described above. This appeal followed.

## II. STANDARD OF REVIEW

Whether defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 5579; 640 NW2d 246 (2002). We review de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim. *Id*. We review for clear error any findings of fact. *Id*. Defendant moved this Court to remand for a *Ginther*[1] hearing on the issue of his counsel's effectiveness, which this Court denied.[2] Our review of defendant's claim of ineffective assistance of counsel is therefore limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

## III. ANALYSIS

Defendant argues that several errors by his trial counsel denied him the right to the effective assistance of counsel. We disagree.

In order to prevail on a claim of ineffective assistance of counsel, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). In order for the defendant to show prejudice, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Pickens*, 446 Mich at 312, quoting *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Downs*, unpublished order of the Court of Appeals, entered October 22, 2015 (Docket No. 326841).

466 US at 689. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Defendant first argues that his trial counsel was ineffective in failing to call an expert to testify regarding the noise level made by a Trans-Am with the specifications of defendant's vehicle. Defendant argues that this testimony would have contradicted Brunhuber's claim that he was right next to defendant's car when he called 911 because noise from the car could not be heard on the 911 recording. However, "[a]n attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defense attorney's failure to call a witness can only constitute ineffective assistance of counsel if it deprives the defendant of a substantial defense. *Id*. (citation and quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation and quotation marks omitted).

Here, defendant has not identified an expert who would testify in contradiction of Brunhuber's testimony, nor has he otherwise made an offer of proof in support of this claim. Defendant has therefore failed to establish a factual predicate for it. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Further, even assuming such an expert witness existed and would testify that the sound of the Trans-Am would have been audible on the 911 recording if Brunhuber had been standing next to it, such testimony would not have made a difference in the outcome of the trial. *Chapo*, 283 Mich App at 371. It would have done little to undercut Brunhuber's testimony that defendant was alone at the time he left Murphy's Inn. Defendant's entire theory of the case rested on his assertion that Lynn Downs was driving at the time of the accident. As a result, the most damaging part of Brunhuber's testimony was that he did not observe Lynn accompanying defendant as he left the restaurant and drove away. Even if the expert witness could have established that Brunhuber was standing farther away from the Trans-Am than Brunhuber testified to, this fact would not have impeached Brunhuber's assertion that defendant drove away alone from the restaurant. Nor would such expert testimony undercut Sedwick's testimony that defendant was behind the wheel of the Trans-Am immediately after the crash. Therefore, counsel's failure to call an expert regarding the noise level of the Trans-Am did not deprive defendant of a substantial defense. *Id*.

Defendant next argues that he was denied the right to the effective assistance of counsel because counsel failed to have his investigator measure the distance between the auto repair shop where Sedwick observed defendant and the scene of the accident. We disagree. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). We conclude that the failure to make these measurements does not undermine our confidence in the jury's verdict. Regardless of the distance between the auto repair shop and the scene of the accident, Sedwick stated that he was able to observe defendant behind the wheel of the car within a matter of seconds after driving up to the scene of the accident and did not see anyone else at the scene. Even if an investigator's measurements had cast doubt on Sedwick's testimony that, while parked at the auto repair shop, he was roughly 200 yards from where the accident occurred, this likely would not have affected the outcome of the case in light of Sedwick's testimony that he

observed no one else at the scene when he pulled up to the accident site just seconds later. *Pickens*, 446 Mich at 312.

Defendant next argues that he was denied the effective assistance of counsel because, during voir dire, his counsel failed to ask prospective jurors if they knew his investigator. Defendant alleges that his counsel was not allowed to call his investigator as a witness because of the trial court's concerns about a possible mistrial. The record does not indicate the precise reason why defense counsel did not ultimately call the investigator as a witness; the trial court in fact offered counsel an opportunity to call the investigator to testify. After Korren Downs testified at trial, the trial court and counsel discussed whether the investigator would be permitted to testify. Defense counsel initially stated that he wanted to call the investigator to impeach Sedwick regarding his distance (while parked) from the scene of the accident. The trial court stated that in order to impeach Sedwick's testimony with extrinsic evidence, defense counsel would have to confirm that Sedwick had been confronted with a statement he allegedly had made to the investigator.[3] Counsel informed the court that he would discuss this option with defendant.

However, when trial resumed the following day, counsel told the court that he would not be calling any further witnesses. Our review of the record reveals that, while defendant's counsel did question Sedwick regarding his conversation with a private investigator, he did not elicit testimony from Sedwick concerning any statements he made to the investigator about how far away he was from the scene of the accident when he was parked at the auto repair shop. Thus, there was therefore no statement to impeach with the investigator's testimony and defense counsel was therefore not deficient in abandoning his attempt to introduce such a statement, regardless of any failure to voir dire the jury concerning any familiarity they may have had with the investigator.

Further, to the extent that defendant argues that his trial counsel was deficient in failing to elicit testimony from Sedwick that was subject to impeachment, defendant cannot demonstrate that but for this failure, the outcome of the trial would have been different. Brunhuber testified that defendant appeared intoxicated when he left the restaurant and drove away alone in a white Trans-Am. Shortly after defendant left, Sedwick observed a white Trans-Am crash into a ditch after driving at a high rate of speed. Sedwick testified that he was able to see the car in the ditch from approximately 200 yards away and then, upon driving over to the scene of the accident, observed defendant behind the wheel. Even if Sedwick had previously given the investigator a different estimate of the distance between his parked vehicle and the accident site, there is not a reasonable probability that this detail would have changed the outcome of the trial in light of the direct and circumstantial evidence against defendant. Therefore, it cannot be said that, but for

---

[3] A witness's testimony denying having made a prior inconsistent statement, or testimony that he or she does not remember making the statement, is sufficient foundation to admit extrinsic evidence of the statement for impeachment purposes. See *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995).

counsel's errors, there would have been a reasonable doubt respecting defendant's guilt. *Pickens*, 446 Mich at 312.

Defendant also argues that his counsel lied to him during trial. Defendant provided this Court with an affidavit stating that his counsel told him that the trial court ruled the investigator could not testify because counsel did not ask prospective jurors about the investigator during voir dire. Defendant states that counsel never informed him of the court's offer to allow the investigator to testify if counsel could prove that he had confronted Sedwick about a prior conversation with the investigator. However, our review of defendant's claim of ineffective assistance is limited to errors apparent on the record. *Mack*, 265 Mich App at 125. Therefore, this Court cannot consider this claim contained in defendant's affidavit because it is not part of the lower court record. Further, even if defendant's claim were true, the fact that the investigator did not give impeachment testimony was not outcome determinative, as discussed above.

Defendant next argues that the performance of his counsel was deficient when counsel failed to impeach the responding officers regarding their failure to obtain the name of the individual (who did not testify at trial) who had arrived at the scene in a van. However, our review of the record demonstrates that counsel impeached the responding officers at length regarding their failure to obtain contact information from the driver of the van. For example, while cross-examining Spens, counsel asked the following: "even though he sat there for 20 to 30 minutes before you had any contact with him with . . . his lights on, you never bothered to get a name of that driver of that van?" Spens attempted to explain the failure to identify the van driver by testifying that "the gentleman was asked to stand by. Maybe something could have been misunderstood."

While cross-examining another responding officer, Austin McLeod, counsel asked McLeod about the identity of the driver of the van. Counsel asked, "you didn't bother taking a license plate number down for the van, did you?" Counsel also cross-examined Officer Jacob Patchett, asking him if he ever bothered to interview the van driver. Because counsel thoroughly cross-examined Spens, McLeod, and Patchett regarding their failure to identify the van driver, defendant cannot demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Pickens*, 446 Mich at 338.

Defendant next argues that counsel's performance was deficient where counsel failed to establish a timeline of events from which the jury could determine that Lynn Downs would have had time to leave the scene before officers arrived. Our review of the record demonstrates that there was no dispute regarding the timing of significant events on the night of the accident. Spens testified that the call from Brunhuber came at 12:55 a.m. and Spens was informed at 1:09 a.m. to be on lookout for a white Trans-Am. Spens arrived at the scene of the accident shortly thereafter and observed defendant standing near the van. McLeod and Patchett arrived at the scene approximately 10 minutes later after traveling north on Wadhams. Defendant argues that counsel should have emphasized that there was enough of a time gap for Lynn Downs to be picked up by Korren Downs without being seen by any of the officers. However, emphasizing the timing of events would have done nothing to undercut the testimony of Brunhuber and Sedwick that defendant was alone in the Trans-Am immediately before and after the accident. Further, defense counsel did argue that Lynn Downs was driving the car at the time of the accident, and presented testimony from both Lynn and Korren Downs in support of this theory.

We conclude that defense counsel's decision regarding the amount of emphasis to place on the timeline of events the night of the accident constituted trial strategy. See *People v Bosca*, 310 Mich App 1, 38; 871 NW2d 307, 334 (2015).

Defendant further argues that counsel's performance was deficient where he failed to pursue polygraph examinations for defendant and Lynn Downs regarding who was driving at the time of the accident. The Michigan Supreme Court has held that the results of a polygraph examination are not admissible at trial. *People v Phillips*, 469 Mich 390, 397; 666 NW2d 657 (2003). Furthermore, defendant has not shown that the results of the examinations would have been favorable to him or that it would have affected the prosecutor's decision to proceed to trial. Defendant has thus failed to establish a factual predicate for his claim. *Hoag*, 460 Mich at 6. Therefore, counsel's failure to pursue polygraph examinations did not fall "below an objective standard of reasonableness." *Pickens*, 446 Mich at 338.

Finally, defendant argues that he was denied his right to a fair trial because of the cumulative effect of counsel's alleged errors. Defendant cites to this Court's holding that "[t]he cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). However, only one of defendant's claims, counsel's failure to elicit testimony from Sedwick that he could impeach with the testimony of his investigator, even arguably constituted deficient performance. This error was not outcome determinative in light of the testimony of Brunhuber and Sedwick. Therefore, there was no accumulation of errors that warranted reversal. *Id*.

Affirmed.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra

-6-