# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

GORDON EMMETT RENIFF,

        Defendant-Appellee.

UNPUBLISHED
June 13, 2017

No. 335727
Allegan Circuit Court
LC No. 14-019037-FC

Before: GADOLA, P.J., and TALBOT, C.J. and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant, Gordon Reniff, of four counts of criminal sexual conduct (CSC) for offenses committed against his granddaughter, TC. The trial court granted Reniff's motion for new trial, ruling that his counsel had performed ineffectively. Judicial review of a claim of ineffective assistance of counsel involves a two-pronged inquiry: did counsel's performance fall below constitutionally adequate standards, and if so, did counsel's errors prejudice the defense? In this case we need not evaluate the trial court's multiple findings of deficient performance because the record is devoid of any evidence that would support a finding of prejudice. We reverse the order granting a new trial and reinstate Reniff's convictions.

I

TC, age 15 at the time of Reniff's 2015 trial, testified that Reniff repeatedly penetrated her with his penis between 2012 and May 2014. She also described acts consistent with second-degree CSC. TC revealed the abuse in 2014 when she reported to a school counselor that she believed she was pregnant.

During the 2012-2014 time frame, Reniff regularly collected TC from school on Fridays and she spent weekends at his home. TC's frequent visits with Reniff ostensibly revolved around TC's responsibility to care for two horses he had procured for her in 2012. Reniff testified that he had obtained the horses specifically for TC's use, and conditioned this gift on her agreement to help with horse-related chores. TC loved the horses "[l]ike all the way to the moon and back."

TC described in considerable detail multiple episodes of sexual intercourse and other sexual contacts with Reniff that followed his acquisition of the horses. Other witnesses provided corroborative testimony. For example, TC's mother testified that TC had five urinary tract

-1-

infections during the two-year period when the sexual contacts were alleged to have occurred, and none thereafter. TC's mother additionally recounted that in September 2013, Reniff became irate and threw a kitchen chair when TC refused to kiss him. TC's sister and step-brother voiced their suspicions that TC had slept in Reniff's bedroom on more than one occasion. Reniff's long-time girlfriend, Karen VanderZand, recalled having seen Reniff and TC lying on a mattress in a shed, their clothed bodies touching, with Reniff's arm around TC's waist and his face toward her hair.

When TC first disclosed the abuse in 2014, she told a school counselor that Reniff had threatened to take away the horses if she ever revealed their sexual activity. The prosecutor presented expert testimony from an experienced child sexual abuse therapist regarding delayed disclosures, and from a child abuse pediatrician who performed a vaginal examination and concluded that the findings were consistent with penetration.

The prosecutor also presented evidence that in 2015, TC attempted suicide by cutting her wrist. TC explained the reasons for her act as follows:

> I figured my life is haunting me. Why I say that, because that's not what I wanted for my Grandpa. . . . I wanted a sweet Grandpa that would help me with my horse, even if he bought all of the food because I am – I – I can't get a job. I can't afford money. I got frustrated with that. I could do nothing about it. . . . I could not stop thinking about it. Like, it was so horrible. I –I could not do it anymore. I am like, "Whatever. I can't do this anymore."

Defense counsel unsuccessfully objected to the introduction of this evidence based in part on his inability to obtain TC's medical and counseling records regarding the suicide attempt before the trial.

Reniff's defense centered on his claim that TC had fabricated the abuse immediately after he threatened to take away her horses, and that he was incapable of having an erection due to erectile dysfunction first diagnosed in 2006. In support of this defense, one of Reniff's daughters testified to witnessing Reniff threaten TC to sell the horses because TC refused to accompany him to do horse-related chores; TC spoke to the school counselor the next day. Reniff detailed his medical ailments, including emphysema, an irregular heartbeat, a weak left arm and slurred speech following a stroke, and high blood pressure. He claimed that in 2006, he sought treatment for his inability to have an erection at the VA Hospital in Battle Creek. Because of his heart problems, Reniff could not take medication for this problem. Instead, the VA prescribed a penile pump. He tried the device several times but was dissatisfied with it. Reniff asserted that he and VanderZand had not had sexual relations in more than four years, the last time being in 2011 or 2012.[1] He denied ever having intercourse with TC or engaging in any sexually inappropriate conduct with her.

---

[1] VanderZand testified that she and Reniff last had relations in 2014, during the time that the abuse of TC was occurring.

The jury convicted Reniff of two counts of first-degree CSC I, MCL 750.520b(1)(b), and two counts of second-degree CSC, MCL 750.520c(1)(b). The court sentenced Reniff to 15 to 45 years' imprisonment for each of the CSC I convictions and 5 to 15 years' imprisonment for each of the CSC II convictions.

Reniff's replacement counsel filed a motion for a new trial and a *Ginther* hearing,[2] asserting that Reniff's trial counsel, Jeffrey Hampel, had performed ineffectively in several significant ways. Hampel supported the motion with his own affidavit, averring that he had failed to question TC about her threat to "get" Reniff if he took away her horses, did not understand that he could have requested the trial court to review in camera records regarding TC's suicide attempt, and incorrectly concluded that he could not introduce Reniff's VA records related to his complaints of erectile dysfunction.

During the subsequent *Ginther* hearing, Reniff's counsel presented testimony focusing and expanding on the three areas of professional deficiency identified in Hampel's affidavit. This evidence included testimony that Hampel had instructed Reniff's family members and close friends that they were responsible for finding a medical expert who could testify regarding Reniff's impotence. Hampel's failure to investigate Reniff's impotency defense figured prominently in the trial court's opinion to grant a new trial. Notably, however, at the *Ginther* hearing counsel presented no evidence tending to show that Reniff was unable to achieve an erection during the time frame in which he allegedly molested TC. While Reniff's medical records document a 2006 complaint of impotence, the examination conducted at that time was apparently negative for any structural abnormalities. During the *Ginther* hearing, no expert testimony was presented addressing whether Reniff was likely impotent in 2012-2014. Nor did counsel request that the court review TC's medical or counseling records related to her suicide attempt.[3]

In a bench ruling, the trial court found that Hampel had conducted his defense of Reniff in a manner falling "outside the wide range of professionally competent assistance." Regarding prejudice, the court articulated:

> The fact that the victim - - the victim's credibility is a key issue in this case [makes it] difficult for this Court to come to a decision that there was a reasonable probability that the outcome would have different in the absence of the deficient performance. If the Defendant's attorney had acted in a manner that would have suggested to the Court that he knew the basic law surrounding sexual assault crimes, that he understood the Court's rulings, which he – it was clear he did not at certain times [which] did result in evidence being excluded.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] The third area of inadequate representation involved trial counsel's failure to impeach VanderZand with an inconsistent statement she had made regarding Reniff's ability to engage in sexual relations.

And that evidence included issues in regards [sic] to credibility and it also included issues in regards [sic] to supporting the Defendant's claim that he had a physical inability to engage in the type of activity that the victim said he engaged in. So the Court does find that counsel was ineffective, that that ineffectiveness created prejudice . . . .

Therefore, the court concluded, Reniff was entitled to a new trial.

The prosecutor filed a motion for reconsideration, which the trial court denied in a lengthy and detailed written opinion. The court reiterated and amplified the reasons it had deemed Hampel's performance deficient. Regarding Reniff's claim of erectile dysfunction, the court pointed out that Hampel failed to properly investigate whether experts were available to bolster Reniff's testimony. Hampel failed to conduct any legal research concerning the admission of TC's suicide-attempt-related records, the court continued, rendering him "completely unprepared at trial" to deal with this evidence. The court rejected that Hampel's treatment of TC's threat to "get" Reniff if he took away her horses qualified as ineffective.

The trial court acknowledged that in addition to proving ineffectiveness, Reniff bore the burden of demonstrating that absent Hampel's errors, a reasonable probability existed that the outcome of the trial would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). As to Hampel's failure to pursue expert testimony regarding erectile dysfunction, the court found: "There remains a reasonable probability that if [trial counsel] had properly investigated his case and at least consulted an expert regarding Defendant's claims of Erectile Dysfunction, the jury could have found a reasonable doubt. . . ." The court made a similar finding regarding the suicide-attempt records, despite acknowledging that "it is not clear whether they were ever received or reviewed."

The prosecutor filed an application for leave to appeal the trial court's new trial order, which this Court granted. *People v Reniff*, unpublished order of the Court of Appeals, entered January 20, 2017 (Docket No. 335727).

II

"Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich. 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, while determinations of constitutional law are reviewed de novo. *Id*. We review a trial court's decision to grant a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

" '[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court set forth the now familiar formula for an ineffective

assistance claim: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate "a reasonable probability that but for counsel's . . . errors," the result of the proceedings would have differed. *Id*. at 663-664. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

"[T]here can be no finding of ineffective assistance of counsel without prejudice." *Shimel v Warren*, 838 F3d 685, 697 (CA 6, 2016). The purpose of a *Ginther* hearing is to permit a defendant an opportunity to develop and present evidence regarding both the ineffectiveness of counsel and the prejudice resulting from that ineffectiveness. In *Strickland*, 466 US at 607, the Supreme Court specifically approved the manner in which we have elected to resolve this appeal: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Assuming without deciding that the trial court correctly labeled Hampel's performance constitutionally ineffective based on his failure to investigate Reniff's erectile dysfunction and to present expert testimony in that regard, Reniff still had to present some evidence that an expert (or admissible medical records) would have bolstered his defense. No such evidence exists. The trial court apparently speculated that at a later date, Reniff would be able to find testimony supportive of his claim that he was physically incapable of achieving an erection during the relevant time period.[4] But a defendant's burden of showing prejudice necessarily includes the production of some evidence "establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Speculation or conjecture regarding what the evidence might have shown, or would show in a new trial, do not satisfy *Strickland*'s prejudice requirement. *People v Hoag*, 460 Mich 1, 8; 594 NW2d 57 (1999).

The same reasoning guides our resolution of the aspect of Reniff's ineffectiveness claim arising from Hampel's failure to obtain TC's counseling records. Despite highlighting the proper procedure for in camera review of the records, Reniff made no effort before or during the *Ginther* hearing to put the procedure in motion. We remain unaware of whether the records contain any material, exculpatory information that may have assisted Reniff in defending against TC's claims. The absence of any factual support for *Strickland*'s prejudice prong compels us to

---

[4] In *Foster v Lockhart*, 9 F3d 722, 725 (CA 8, 1993), the defendant underwent testing that demonstrated his physical impotence. No testing was ever performed in this case, nor has new counsel offered proof that a urologist would testify in a manner consistent with Reniff's claim that his impotence prevented him from penetrating TC.

conclude that Reniff failed to demonstrate that absent any errors on the part of his trial counsel, a reasonable probability exists that the trial outcome would have differed.[5]

Because the trial court erred in concluding that defendant was prejudiced by defense counsel's deficient performance, it abused its discretion by granting Reniff's motion for a new trial. *Lane*, 308 Mich App at 51.

We reverse.

/s/ Michael F. Gadola
/s/ Michael J. Talbot
/s/ Elizabeth L. Gleicher

---

[5] Assuming that trial counsel's ineffectiveness included his failure to confront VanderZand with an inconsistent statement, we are unpersuaded that skillful impeachment likely would have altered the outcome of the trial. Other witnesses testified that VanderZand had repeatedly claimed that Reniff was impotent.