*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 28, 2021

v

RONALD JUNIOR SWANSON,

Defendant-Appellant.

No. 347881
Kalamazoo Circuit Court
LC No. 2018-000976-FC

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right his conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment.[1] Defendant claims that his right to effective assistance of counsel was violated and that he should be granted a new trial. Defendant argues that defense counsel abandoned him during a critical portion of the trial, thus creating a presumption of ineffectiveness. See *United States v Cronic*, 466 US 648, 657-662; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Defendant also argues that defense counsel's performance was deficient in several respects throughout the trial and that these deficiencies prejudiced the outcome of the trial. See *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). After holding an evidentiary hearing, the trial court concluded that defendant was not denied effective assistance of counsel. We affirm.

## I. BACKGROUND

This appeal arises from an alleged sexual assault to which there were no third-party witnesses. While defendant and complainant agreed that they met on the day of the offense and that they were alone at the time of the alleged crime, they offered dramatically different versions

---

[1] The trial court was required to sentence defendant to a mandatory 25-year minimum sentence because he committed a "serious crime" and at least one of his prior felonies was a "listed prior felony." See MCL 769.12(1)(a).

of what transpired between them. Complainant testified that defendant agreed to drive her in her vehicle to a nearby park to look for her wallet that had been stolen the previous night. Complainant said that defendant decided that they should instead search a park near his home and then proceeded to drive her to an unpaved area near a convenience store. According to complainant, after she denied a sexual advance from defendant, he pulled a gun, pointed it at her and forced her to perform oral sex on him. Complainant testified that after defendant ejaculated in her mouth she spit his semen into a tank top given to her by a friend, Lisa Little, that was in the backseat of the car. When complainant reported the crime she gave the tank top to the police, and the DNA analysis found a strong likelihood that the shirt contained DNA from defendant and complainant.

Defendant testified that he drove complainant to the convenience store and then the park where complainant believed her wallet may have been tossed. According to defendant, he left complainant briefly to procure drugs for her and they stayed at the park and talked for a while before he drove complainant back to Little's home, where complainant was staying. He denied any sexual contact with complainant. Defendant explained that his semen was on the tank top because he had sex with Little on a date prior to the alleged assault of complainant and had ejaculated in that shirt. The defense's theory was that Little conspired with complainant to make a false accusation against defendant so that Little could avoid paying defendant over $7,000 that she owed him for drugs.[2]

Defendant was charged with CSC-I, MCL 750.520b(1)(e) (actor is armed with a weapon). By finding him guilty of the lesser-included CSC-III offense, the jury impliedly acquitted defendant of CSC-I. See e.g., *People v Torres*, 452 Mich 43, 47-48; 549 NW2d 540 (1996).

This Court granted defendant's motion for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). During that hearing, defendant argued that his trial counsel abandoned him on the last day of trial, did not adequately prepare him to testify, did not file any motions, and did not adequately pursue inconsistencies in the complainant's testimony. After hearing testimony from defense counsel and defendant, the trial court denied defendant's motion for a new trial, concluding that his counsel's performance was not deficient and that his trial strategy, although ultimately unsuccessful, was reasonable.[3]

## II. ANALYSIS

The Sixth Amendment guarantees a criminal defendant the right "to have the assistance of counsel for his defence." US Const, Am VI. The Supreme Court "has recognized that the right to counsel is the right to effective assistance of counsel." *Strickland*, 466 US at 686 (quotation marks and citation omitted). In order to prevail on a claim of ineffective assistance of counsel under

---

[2] Little refused to be interviewed by the police and was not called to testify.

[3] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

*Strickland* the defendant must, in addition to showing a deficient performance, demonstrate a "reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In *Cronic*, 466 US at 658, however, the Supreme Court identified circumstances under which prejudice against the defendant is presumed. Relevant to this case, prejudice is presumed "if the accused is denied counsel at a critical stage of his trial," and when the circumstances are such that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small." *Id.* at 659-660. In *People v Frazier*, 478 Mich 231, 244-245; 733 NW2d 713 (2007), the Michigan Supreme Court described the *Cronic* and *Strickland* standards as follows: "[t]he *Cronic* test applies when the attorney's failure is complete, while the *Strickland* test applies when counsel failed at specific points of the proceeding."

In this case, closing arguments were made on a Friday and deliberations continued into the following Monday. Defendant argues that the absence of his retained counsel on that Monday left him without counsel at a critical stage in the proceedings. However, defense counsel called to notify the trial court that he had been in the hospital and would be unable to attend the day's proceedings. His call alerted the court to his anticipated absence, and the court provided defendant with substitute counsel. At no point during the trial proceedings was defendant left without counsel. Defendant's second argument, i.e., that the circumstances were such that even a competent attorney could not provide reasonable representation, also fails. The factual basis for defendant's argument is that because his substitute counsel was unfamiliar with the case (having been brought in at the last minute), he could not have properly represented defendant regarding any issues that arose. But the only events that took place in the trial that day were the reading of the verdict, the polling of the jury, and determining whether defendant would be placed in custody or be allowed a bond. These are routine matters, and there is no indication that the substitute counsel was not competent to handle them. For these reasons, we conclude that *Cronic* does not apply in this case.

Given that *Cronic* does not afford relief, we must consider defendant's claim that he is entitled to a new trial on the basis of the *Strickland* standard. As noted, a claim of ineffective assistance of counsel requires proof of two prongs: the ineffective performance prong and the prejudice prong. *Strickland*, 466 US at 687. "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 313 Mich App at 431 (quotation marks and citation omitted).

Defendant first argues that counsel's representation was deficient because he did not file any motions and failed to adequately prepare defendant to testify in own defense. The fact that no motions were filed does not by itself indicate that counsel's performance was deficient, see *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001), and defendant does not identify any motions that counsel should have filed. As to defendant's testimony, at the *Ginther* hearing

defense counsel testified about the steps he took to prepare defendant to testify and that he considered defendant well-prepared. In contrast, defendant testified that the only conversation he had with counsel about testifying at trial was a brief conversation after the last prosecution witness. Although the trial court did not resolve this specific discrepancy, it generally found defense counsel's testimony credible. Defendant does not argue that the court's credibility determination was clearly erroneous. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) ("We review a trial court's determination of credibility for clear error.").

Moreover, defendant fails to explain how he was prejudiced by any lack of preparation. In his trial testimony, defendant unequivocally denied the alleged crime and presented the jury a clear and coherent version of events. Defendant does not contend that he would have testified differently with more preparation. Rather, he said at the *Ginther* hearing that his only regret was that he lost his temper during cross-examination. Perhaps more or better preparation from counsel would have prevented defendant from losing his temper. But we see no ground to conclude that a reasonable probability exists that defendant's show of emotion during his testimony affected the outcome at trial.

Next, defendant argues that defense counsel failed to pursue inconsistencies in complainant's testimony. We agree with defendant that this case was essentially a credibility contest. However, the record shows that defense counsel effectively cross-examined complainant on numerous matters and also introduced inconsistent statements that complainant made regarding the assault. For instance, complainant testified that defendant pointed a gun at her face, but counsel established through cross-examination of two police officers that complainant told the police that the gun was pointed at her head. Counsel also successfully moved to introduce a petition—filed by complainant's mother—that resulted in an order of mental health treatment for complainant shortly before trial.[4] According to the petition, complainant stated that she saw ghosts and fairies and wanted to take her children to heaven with her.

Defendant nonetheless argues that his counsel did not do enough to challenge complainant's credibility. Defendant specifically argues this his counsel was ineffective for failing to address an inconsistency regarding complainant's missing wallet. At trial, complainant testified that she wanted to search the nearby park for her wallet and that it was defendant's idea to search a park near his house instead. At the preliminary examination, however, complainant testified that she had already searched the nearby park and that was why they were going to search the park by defendant's home. Counsel admitted at the *Ginther* hearing that he may have missed some inconsistences between complainant's testimony at the preliminary examination and at trial.

---

[4] The petition and order were provided to defense counsel on the second day of trial. Defendant argues that counsel should have sought a continuance to further investigate the allegations in the petition and perhaps seek a *Stanaway* hearing to determine if there were additional records. See *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994). There is no indication in the record, however, that the trial court would have been inclined to grant a continuance. And the suggestion that further evidence harmful to complainant's credibility would have been discovered is speculative. See *People v Avant*, 235 Mich App 499, 508; 597 NW2d 499 (1999).

Even assuming that it was a professional error for defense counsel to not impeach complainant with her testimony at the preliminary examination, defendant does not establish outcome-determinative prejudice. Defense counsel asked complainant several questions about the wallet. For example, counsel asked complainant if she reported the wallet being stolen, why she thought the wallet would be in the park, and if she contacted her "friend" who she said had stolen her wallet. In closing argument, defense counsel explained why the jury should not believe complainant's testimony and specifically addressed the missing wallet:

> Even when you start off on how this whole thing started—[complainant] testified that the wallet was stolen. She saw someone run off in a certain direction and that's why she thought they should start looking at the park. I asked her did you ever call the police. Did you ever report it stolen? Did you ever contact credit card companies? No, no, no. Yet, she said her whole life was in that wallet. Nothing was done about it.

Given that the believability of complainant's testimony regarding the missing wallet was placed squarely before the jury, a reasonable probability does not exist that impeaching complainant with an additional minor point regarding the wallet would have led to a different outcome at trial.

Finally, defendant argues that defense counsel should have impeached complainant's testimony regarding when and how defendant removed his penis from his pants. Counsel asked complainant at trial how defendant was able to remove his penis if he had a gun in one hand and her hair in another. Complainant answered, "By placing it [i.e., the gun] next to him and undoing his pant[s] while holding on to my hair." Counsel then questioned complainant at length about the "logistics" of that maneuver. During counsel's cross-examination of Kristin Cole, the detective who interviewed complainant, it was revealed that complainant told Cole that defendant had his penis out before he pulled the gun from his left side. Defense counsel was not asked at the *Ginther* hearing why he did not directly impeach complainant with this statement at trial. However, the record shows that defense counsel sought to attack complainant's credibility by focusing on the plausibility of her testimony that defendant balanced the gun up against his leg while removing his penis. Counsel argued to the jury that complainant's testimony on this matter was "logistically impossible." This was a reasonable trial strategy, and considering that defendant was acquitted of the charge that he had a weapon during the assault, it appears that it was successful.

In sum, overall defense counsel was an active and effective advocate for his client, obtaining an acquittal of CSC-I. Defense counsel thoroughly challenged complainant's credibility. The fact that defense counsel's strategy did not completely succeed is not an indication of deficient performance. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Even assuming that defense counsel should have better prepared defendant to testify and impeached complainant with a minor inconsistency regarding the wallet, defendant does not establish a reasonable probability of a different result at trial.

Affirmed.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering

-5-